This case involves the "stacking" of uninsured motorist coverage provided in an insurance policy covering two automobiles.
The plaintiffs, Waltina Jones and Doris McNish, were passengers in an automobile driven by Randolph Bellamy. They were involved in a collision with an uninsured motorist, and both were injured. Bellamy had an insurance policy with the defendant, Travelers Insurance Company, Inc., which covered two different automobiles that Bellamy owned.[1] In this action, the plaintiffs *Page 235 
seek to stack the uninsured motorist coverages provided under the policy. Neither of the plaintiffs is a named insured in the policy; neither is married to or otherwise related to Bellamy; and neither has ever paid any premiums on the policy.
Travelers filed a motion for partial summary judgment as to the issue of stacking coverages. The plaintiffs filed a motion for partial summary judgment as to the issue of liability based upon the negligence of the other driver involved in the accident and that driver's lack of liability insurance. The trial judge granted plaintiffs' partial summary judgment motion as to liability, and denied Travelers' motion for partial summary judgment on the issue of stacking. Travelers was given permission to file this interlocutory appeal (see Rule 5, Ala.R.App.P.), contending that a distinction exists in classes of insureds when it comes to stacking uninsured motorist coverages and that this Court has consistently recognized that distinction since Lambert v. Liberty Mutual Insurance Co.,331 So.2d 260 (Ala. 1976).
The facts of the case are not disputed. The only issue presented for review is whether the plaintiffs are entitled to stack the uninsured motorist coverages under the policy owned by Bellamy. The trial judge held that they were so entitled, citing Ala. Code 1975, § 32-7-23(c):
 "(c) The recovery by an injured person under the uninsured provisions of any one contract of automobile insurance shall be limited to the primary coverage plus such additional coverage as may be provided for additional vehicles, but not to exceed two additional coverages within such contract. (Acts 1965, No. 866, p. 1614; Acts 1984, No. 84-301, p. 672, § 4.)"
The trial judge held that the plaintiffs were "injured persons" within the meaning of the statute and were therefore entitled to stack coverage.
Travelers argues that § 32-7-23(c) was not intended to change the law with regard to classes of insureds, and was intended only to limit the number of coverages that could be "stacked."
This Court has recognized that there are distinctions between two classes of insureds in stacking situations. See, White v.Georgia Casualty Surety Insurance Co., 520 So.2d 140
(Ala. 1987); Holloway v. Nationwide Mutual Insurance Co.,376 So.2d 690 (Ala. 1979); and Billups v. Alabama Farm Bureau MutualCasualty Insurance Co., 352 So.2d 1097 (Ala. 1977).
In the recent case of White v. Georgia Casualty SuretyInsurance Co., supra, this Court stated its latest explanation of these two classes of insureds: *Page 236 
 "We agree with the Virginia Supreme Court [Cunningham v. Insurance Co. of North America, 213 Va. 72, 189 S.E.2d 832, 836 (1972)] that the rationale upon which stacking under multi-vehicle policies has been justified for insureds of the first class is inapplicable to insureds of the second class. Although an insured of the first class is covered under uninsured motorist policy provisions in whatever vehicle he may be occupying, an insured of the second class is . . . covered only if the particular vehicle he occupies is specifically included under the coverage of some policy. Thus, the payment of an additional premium to cover additional vehicles obtains a substantial benefit insofar as insureds of the second class are concerned. Not being a party to the contract, the expectations of an insured of the second class as to the extent of his coverage do not result in contract ambiguity and are not sufficient to avoid the effect of the policy's limiting clause."
520 So.2d at 141-42, quoting Lambert v. Liberty MutualInsurance Co., 331 So.2d 260, 264-65 (Ala. 1976).
In the White case, Mr. White and his wife were injured while riding in a truck owned by his employer that Mr. White drove in the line and scope of his employer's business. We authorized Mr. White to stack, but we specifically disallowed stacking by his wife, stating:
 "Ala. Code (1975), § 32-7-23, provides the basis for stacking insurance coverage by a person 'insured thereunder' as provided in the primary liability policy. In the present case, Johnny C. White, as an employee of Automatic Gas Company, is included in the primary liability part of the insurance policy as one who is 'insured thereunder,' and is, therefore, entitled to stack coverage under the fleet policy. Mary E. White is not a person 'insured thereunder,' according to the insurance policy and is not entitled by statute to stack coverage. She is entitled only to the $10,000.00 already paid to her under the uninsured motorist provision of the policy."
White, supra, 520 So.2d at 141.
The plaintiffs in this case argue, and the trial judge agreed, that under the plain language of the statute, which was not applicable in White, they are entitled to stack coverages. In short, they argue that by adopting § 32-7-23(c), the legislature intended to change the rule so as to eliminate the distinctions between classes of insureds in stacking situations and to provide that any injured person who is covered under one policy is entitled to stack coverages. We agree that the plaintiffs, in this case, can stack because they are within the definition of an "insured" under the terms of the uninsured motorist coverage portion of the policy, and in this case there is an additional "coverage" for another automobile "within such contract."
We have carefully reviewed the legislative history of Act No. 84-301, and specifically Section 4 of that Act, which contains subsection (c). Section 4 reads as follows:
 "Section 4. Section 32-7-23, Code of Alabama 1975, is hereby amended to read as follows:
 " '§ 32-7-23. (a) No automobile liability or motor vehicle liability policy insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any person arising out of the ownership, maintenance or use of a motor vehicle shall be delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state unless coverage is provided therein or supplemental thereto, in limits for bodily injury or death set forth in subsection (c) of section 32-7-6, under provisions approved by the commissioner of insurance for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness or disease, including death, resulting therefrom; provided, that the named insured shall have the right to reject such coverage in writing, such coverage need not be provided in or supplemental to a renewal policy where the named insured had rejected the coverage in connection with the policy previously *Page 237 
issued to him by the same insurer [sic].
 " '(b) The term 'uninsured motor vehicle' shall include, but is not limited to, motor vehicles with respect to which: (1) neither the owner nor the operator carries bodily injury liability insurance; (2) any applicable policy liability limits for bodily injury are below the minimum required under section 32-7-6; (3) the insurer becomes insolvent after the policy is issued so there is no insurance applicable to, or at the time of, the accident; (4) the sum of the limits of liability under all bodily injury liability bonds and insurance policies available to an injured person after an accident is less than the damages which the injured person is legally entitled to recover.
 " '(c) The recovery by an injured person under the uninsured provisions of any one contract of automobile insurance shall be limited to the primary coverage plus such additional coverage as may be provided for additional vehicles, but not to exceed two additional coverages within such contract.' "
House Bill 81 was introduced by Rep. Marietta and others, and the title to that bill read as follows:
 "H. 81. To amend Chapter 7 of Title 32 of the Code of Alabama 1975, commonly known as the Motor Vehicle Safety-Responsibility Act by amending Section 32-7-5, 32-7-6, 32-7-16 and 32-7-23
thereof so as to increase the amount of property damage which must be sustained to require an accident report to be filed and to provide what the term 'uninsured motor vehicle' shall include under the uninsured motorist coverage section of the Motor Vehicle Safety-Responsibility Act, increases [sic] the amount of payment on judgments necessary to satisfy the requirements of the Motor Vehicle Safety-Responsibility Act, and to increase the minimum amount of liability required under a motor vehicle liability policy under the Motor Vehicle Safety-Responsibility Act."
1984 Journal of the House, p. 20.
Representative Coleman offered the following substitute to H.B. 81 as amended:
 "To amend Chapter 7 of Title 32 of the Code of Alabama 1975 commonly known as the Motor Vehicle Safety-Responsibility Act by amending Sections 32-7-5, 32-7-6, and 32-7-23 thereof so as to increase the amount of property damage which must be sustained to require an accident report to be filed and to increase the security required for an automobile or a motor vehicle liability policy while prohibiting duplication and the stacking of such under the uninsured and underinsured motorist coverage and make available underinsured motorist coverage under the Motor Vehicle Safety-Responsibility Act." (Emphasis added.)
1984 Journal of the House, p. 982.
The substitute bill passed the House by a vote of 52 to 47.1984 Journal of the House, p. 986.
In the Senate, H.B. 81, as passed by the House, was reported to the floor of the Senate with a committee substitute, which was substantially like the bill initially offered by Rep. Marietta, and the Senate committee substitute did not include subsection (c), which is the subject of this opinion. Senator Langford offered a substitute bill for the Senate committee substitute. The title to Senator Langford's substitute bill was, in words and figures, the same as that of the original bill.
The committee substitute, as amended by the Teague substitute, as amended by the Langford substitute, for H.B. 81, was adopted by the Senate by a vote of 19-8. 1984 Journal ofthe Senate, p. 1154. The House concurred in the senate amendment, and adopted H.B. 81 by a vote of 49-48. 1984 Journalof the House, p. 2037.
We do not have any of the debates in the House or the Senate to aid us in attempting to ascertain, in view of the legislative history of H.B. 81, whether the legislature, in adopting (c): 1) intended to effect a compromise to authorize Class II insureds to "stack" on the same basis as Class I insureds and limit the number of coverages that either class could stack; 2) intended only to limit stacking by Class I insureds, *Page 238 
without extending the stacking privilege to Class II insureds; or 3) intended to limit the number of coverages which could be stacked by either a Class I or a Class II insured when more than one vehicle was included for coverage in a single policy.
In ascertaining legislative intent, however, we are not unguided. In the seminal case involving the right of Class II insureds to "stack," this Court discussed the statutory underpinnings of the right to "stack," in general, and spelled out the distinctions between the two classes of insureds.Lambert v. Liberty Mutual Ins. Co., 331 So.2d 260 (Ala. 1976). In Lambert, this Court discussed the entire history of "stacking" insurance coverages and specially delineated between insureds of the first class and insureds of the second class. We quote extensively from that opinion to show the state of the law at the time the legislature was considering H.B. 81:
 "Our previous Alabama cases allowing stacking have fallen generally into two separate categories.
 "This Court first allowed stacking in a case in which the insured-passenger sought to stack coverage under his own personal uninsured motorist policy onto coverage under a policy owned by the driver. In Safeco Ins. Co. of America v. Jones, 286 Ala. 606, 243 So.2d 736 (1970), this Court held that the passenger, who was injured in a collision with an uninsured motorist, was not only entitled to coverage under his own uninsured motorist policy but was also entitled to coverage under the driver's policy.
 "Under the second category of cases in which this Court has permitted stacking, the injured party seeks to stack coverages under separate uninsured motorist coverages on multiple vehicles insured under one policy which lists him as the named insured. In Employers Liab. Assurance Corp. v. Jackson, 289 Ala. 673, 270 So.2d 806 (1972), the doctrine of stacking coverages was extended to cover this second category of cases. Under the rule set out in Jackson, the insured is permitted to stack benefits under the uninsured motorist provisions of his personal policy where he has paid separate premiums for each vehicle insured under one multi-vehicle policy.
 "Now, by this appeal, Lambert urges this Court to extend the concept of stacking to cases falling in a third factual category. Lambert contends that an injured insured should be allowed to stack coverages on multiple vehicles insured under one policy where the policy in question has been purchased and is owned by another party, that party being the named insured. This contention presents a question of first impression in Alabama. However, in at least two cases the United States District Court for the Northern District of Alabama has been presented with this issue. That Court held in both cases that it would not extend the doctrine of stacking to cover cases falling under this third category. See Long v. United States Fidelity Guar. Co., 396 F. Supp. 966
(N.D.Ala. 1975) (Lynne, J.); Witcher v. Travelers Indemn. Co., Civil Action No. 73-1023 (N.D.Ala., Sept. 10, 1974) (Lynne, J., unreported.)
 "The rationale underlying the doctrine of stacking as it has evolved in Alabama has been recently articulated by this Court in Great Cent. Ins. Co. v. Edge, 292 Ala. 613, 298 So.2d 607
(1974). In that case, a named insured, while a pedestrian, was struck and injured by an uninsured motorist. He was allowed to stack coverages on several vehicles insured under the same policy even though the policy included a limiting clause which arguably prohibited such recovery. In the language of that opinion, 'the law of this state with respect to uninsured motorist coverage precludes an insurer from collecting a premium for certain coverage, then taking that coverage away by a limiting clause, under the rationale that a contrary holding would be in violation of the uninsured motorist insurance statute.' Id. at 616, 298 So.2d at 609. The Court added that its opinion in Jackson 'focused on the real issue, that being the fact that the insured had paid two premiums — that in effect the [insureds] had purchased two policies of *Page 239 
insurance on one form and that the public policy expressed in the uninsured motorists' insurance statute prevented the insurance company from limiting its liability under such circumstances.' Id. at 617, 298 So.2d at 610.
 "Not only may these stacking cases be analyzed in terms of their statutory underpinnings, they may also be analyzed as a further application of the established rule in Alabama that 'the insured is entitled to the protection which he may reasonably expect from the terms of the policy he purchases.' Aetna Cas. Sur. Co. v. Chapman, 240 Ala. 599, 602, 200 So. 425, 427 (1941) (emphasis added).
 "As Professor Keeton analyzes it, the principle of reasonable expectations insures that '[t]he objectively reasonable expectations of applicants and intended beneficiaries regarding the terms of insurance contracts will be honored even though painstaking study of the policy provisions would have negated those expectations.' R. Keeton, Basic Text on Insurance Law § 6.3(a), at 351 (1971).
 "By permitting the insured to stack his coverages, this Court has simply honored the reasonable expectation of the 'named insured' that his payment of an additional premium will result in increased coverage for those falling within the definition of the 'named insured,' and where an expectation of this nature is in conflict with a limiting clause in the policy, the resulting ambiguity must be resolved in favor of the insured due to the nature of insurance contracts. See generally Note, Insurance-Stacking-Multiple Recovery Permitted under Single Policy Insuring More Than one Vehicle, 7 U.Rich.L.Rev. 385 (1972). As explained by Professor Keeton, '[i]nsurance contracts continue to be contracts of adhesion under which the insured is left little choice beyond electing among standardized provisions offered to him. . . .' R. Keeton, Basic Text on Insurance Law § 6.3(a), at 350 (1971). Recognition of this circumstance is at least an implied element in this Court's opinions in cases such as Edge and Jackson. Such recognition is implicit in language such as the following statement: 'the [insurer] should pay in two instances because the insured had paid a premium in two instances for uninsured motorist coverage.' Employers Liab. Assurance Co. v. Jackson, 289 Ala. at 679, 270 So.2d at 810.
 "However, what may be a reasonable expectation for the purchaser and 'named insured' under a policy may not necessarily be so for an insured such as Lambert who has become an insured by virtue of his riding as a passenger in an insured vehicle. Differences between the coverages provided for these two classes of insureds are quite significant as has been pointed out by the Kansas Supreme Court in Sturdy v. Allied Mut. Ins. Co., 203 Kan. 783, 791, 457 P.2d 34, 40 (1969):
 " '[T]he policy . . . defines two separate classes of persons as being "insured" under it: First, the named insured (and any relative); and second, any other person while occupying an insured automobile. To be insured, the latter must actually be occupants of an insured vehicle. Their coverage is tied to and limited to actual occupancy of a particular automobile. This is not true of the named insured. His coverage . . . is not tied to or limited by occupancy of an automobile. . . .
 " 'Thus we see that the policy provides the named insured with two kinds of coverage: While he is in his insured automobile, and wherever else he may happen to be when he suffers bodily injury due to an uninsured motorist. This latter constitutes a broad reservoir of coverage.'
 "If an insured of the first class [i.e., 'named insured'] is already covered under all circumstances against the risk of uninsured motorist injuries, what additional personal coverage will he acquire by the payment of an additional premium for coverage on a second vehicle? The answer is that were it not for the privilege of stacking, no additional personal coverage would be afforded the 'named insured' in exchange for his additional premium. *Page 240 
 "The Supreme Court of Virginia in considering the precise issue presently before this Court also recognized this circumstance as evidenced by the following language:
 " 'The named insured in a policy receives coverage, and a contract benefit, for which he has paid a consideration. He seeks indemnity based on the payment of that premium and where he has paid separate premiums he is entitled to the additional coverages. However, this argument and reasoning does not apply to a permissive user of a vehicle. . . .'
 "Cunningham v. Ins. Co. of North America, 213 Va. 72, 77, 189 S.E.2d 832, 836 (1972). The well reasoned opinion in Cunningham, authored by Justice Harrison, has been expressly adopted by several other courts which have considered this same issue. E.g. Long v. United States Fidelity Guar. Co., 396 F. Supp. 966, 969-70 (N.D.Ala. 1975) (Referring to the above-quoted excerpt from Cunningham, Judge Lynne wrote, 'This reasoning is sound.' 396 F. Supp. at 970); Moomaw v. State Farm Mut. Auto. Ins. Co., 379 F. Supp. 697, 703 (S.D.W.Va. 1974).
 "We agree with the Virginia Supreme Court that the rationale upon which stacking under multi-vehicle policies has been justified for insureds of the first class is inapplicable to insureds of the second class. Although an insured of the first class is covered under uninsured motorist policy provisions in whatever vehicle he may be occupying, an insured of the second class is similarly covered only if the particular vehicle he occupies is specifically included under the coverage of some policy. Thus, the payment of an additional premium to cover additional vehicles obtains a substantial benefit insofar as insureds of the second class are concerned. Not being a party to the contract, the expectations of an insured of the second class as to the extent of his coverage do not result in contract ambiguity and are not sufficient to avoid the effect of the policy's limiting clause.
 "Can it be seriously contended that Seaboard expected that the $4.00 premium it paid for uninsured motorist coverage on each of its 1,699 vehicles would purchase coverage for all permissive occupants of its vehicles to the tune of $16,900,000? Clearly, such an expectation would not have been a reasonable one under the terms of the commercial fleet policy here in question. The status of Lambert (for purposes of uninsured motorist coverage) as an insured solely by virtue of his occupancy of the vehicle, is clearly distinguishable from the status of a named insured who is entitled to stack coverages by virtue of his personal payment of an additional premium for each vehicle insured under a multi-vehicle policy.
 "For the reasons given, we decline to extend the privilege of stacking to insureds of the second class. In so ruling we thereby affirm the decision of the trial court."
331 So.2d at 262-65
The question then becomes: What did the legislature intend when it amended § 32-7-23 by adopting subsection (c), which states that "[t]he recovery by an injured person under the uninsured provisions of any one contract of automobile insurance shall be limited to the primary coverage plus such additional coverage as may be provided for additional vehicles, but not to exceed two additional coverages within such contract"?
The plain meaning of the amendment extends "stacking" of uninsured motorist coverage to all persons who are insureds, whether named insureds or not, and entitles them to recover "the primary coverage plus such additional coverage as may be provided for additional vehicles, but not to exceed twoadditional coverages with such contract." The plaintiffs were obviously "persons injured," and because the policy provided them primary coverage and contained an additional coverage for an additional vehicle "within such contract," then they are entitled to stack that coverage under the plain meaning of the statute.
Although the plaintiffs are not named insureds, they are "insureds" under the policy language itself, by reason of the fact that they were passengers in one of the *Page 241 
vehicles covered under the policy. Because the particular policy in this case contained "an additional coverage . . . within such contract," they can stack that coverage. Because of this fact, the judgment of the trial court is due to be affirmed.[2]
AFFIRMED.
TORBERT, C.J., and SHORES, HOUSTON and STEAGALL, JJ., concur.
JONES, ALMON, BEATTY and ADAMS, JJ., concur in the result.
[1] The actual policy of insurance was not made a part of the original record in this case, and the briefs of the parties indicated that there were two separate policies of insurance involved. In Travelers's brief, the following statement of fact is made:
 "The Plaintiffs, Waltina Jones and Doris McNish, filed uninsured motorist claims, in the Circuit Court of Mobile County, against The Travelers Insurance Company, Inc. (hereinafter The Travelers) as a result of an automobile accident that occurred in Mobile County on September 11, 1985. At the time of the accident, the Plaintiffs were occupants of a vehicle owned and being driven by Randolph Bellamy and insured by The Travelers under a policy of automobile insurance. The driver of the only other vehicle involved in the accident was uninsured.
 "At the time of the accident, Randolph Bellamy owned a second automobile which was also insured by The Travelers. Both automobile policies owned by Randolph Bellamy contained provisions for protection against uninsured motorists. In their complaint, the Plaintiffs seek to stack the uninsured motorist coverage available under both of these policies of insurance." (Emphasis added).
The plaintiffs, in their brief, framed the legal issue, as follows:
 "THE TRIAL JUDGE CORRECTLY RULED THAT SECTION 32-7-23(c) OF THE MOTOR VEHICLE SAFETY RESPONSIBILITY ACT ENTITLES THE PLAINTIFFS TO STACK UNINSURED MOTORIST COVERAGE UNDER TWO POLICIES OF INSURANCE COVERING THE VEHICLES OF THE DEFENDANT'S INSURED AT THE TIME OF THE ACCIDENT."
After submission, pursuant to the provisions of Rule 10(f), Ala.R.App.P., this Court requested that the record be supplemented to include the "two" policies. On June 1, 1988, the record was supplemented. The trial judge's order in that supplemental record refers to "the two insurance policies," but only one policy is appended and it shows coverages for two vehicles. We attach as an appendix to this opinion a copy of that page of the policy listing the automobiles covered by it.
[2] We express no opinion on whether a passenger in a car that is covered by one policy can stack another coverage included in aseparate policy. Although the briefs of both parties indicated that this case involved that very question, we now have the policy before us, having obtained it by utilizing Rule 10(f), Ala.R.App.P., to supplement the record. Even though there continues to be reference to "the two policies of insurance," in the supplemental record, the policy sent to us indicates that there is but one policy and that it covers twovehicles. *Page 242 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 243