I respectfully dissent.
I begin by conceding that, without citing Travelers InsuranceCo. v. Jones, 529 So.2d 234 (Ala. 1988), the Court in the instant case faithfully follows the rationale of Travelers:
that the statutory term "any one contract of automobile insurance" means that each separate automobile liability policy issued by the insurer is to be treated as a separate contract of insurance. I agree that in other contexts this construction would be entirely appropriate. But, here, the very purpose of Ala. Code, § 32-7-23, is being thwarted by such a construction.
In my opinion, the legislature could not have intended to create a "Russian roulette" game of chance. The operative effect of the statute can be carried out with some degree of consistency and predictability only if the statute treats all like coverages between the same parties (the insurer and the insured) as one contract of insurance. Otherwise, sophisticated insurers (and insureds, as well), in considering each application for coverage, must go through the mental exercise of deciding whether to issue separate policies to cover each vehicle owned by the insured, and thus avoid the risk of stacking uninsured motorist coverages as to passengers (as inTravelers) but, at the same time, assume the risk of stacking, without limitations, such coverage for other insureds for each insured vehicle (as in the instant case).
Quite simply, the legislature could not normally have intended different coverages depending upon the choice of using one piece of paper as opposed to several pieces of paper. What possible policy consideration would have dictated such arbitrary results? I suggest there are none.
Why then did the legislature say "any one contract"? Only a cursory knowledge of the insurance industry is required to answer this question. If the insured owns two separate classes of vehicles requiring different kinds of coverage (commercial trucks and non-commercial automobiles, for example, coverage for each such class of vehicles would constitute "one contract" of insurance. If the insured places his coverage of two vehicles so that each is covered by different insurers, each policy constitutes a separate contract of insurance. But an unintended application of the statute results where the same coverage applicable to each of several vehicles within the same class is treated as different contracts of insurance simply because they are single-vehicle policies. *Page 1074 
Then, too, there are other practical reasons for issuing separate or single-vehicle policies other than some conscious effort on the part of the insurer or the insured to circumvent the operative effect of § 32-7-23(c). For example, a multiple-vehicle policy will ordinarily reflect a single premium due-date for all coverages and could quite possibly work an undue hardship on the insured. Further, the acquisition of new or replacement vehicles rarely occurs on the anniversary date of the policy; thus, it is feasible and practicable, because of different dates of coverages, to issue separate or single-vehicle policies. These valid, practical reasons for not having one multiple-vehicle policy should not obviate the legislative will to limit stacking to the "primary coverage" plus "two additional coverages."
It is ironic, if not tragic, that we can not agree upon what seems to be the clear intent of the legislature. This piece of legislation began as a single-subject bill to increase the minimum required limits of automobile liability insurance (from $10,000/$20,000 to $20,000/$40,000). An amendment was offered to eliminate "stacking" of coverages where the insured had several vehicles covered by the same insurer.
It was in this posture that the art of compromise in the legislative process played its mystical hand. What eventually emerged (as is often the case) was a very sensible and workable Act that accomplished two substantial changes in the law. By the use of the term "any injured person," the Act abolished the distinction between classes of insureds for uninsured motorist protection purposes. Travelers Insurance Co. v. Jones, supra.
(In my opinion, as my special concurring opinion in Travelers
indicates, that case reached the right result, but for the wrong reason.) This meant that the term, as used in the original Act, "for the protection of persons insured thereunder" was no longer applicable to distinguish between persons insured under the liability provisions of the policy and non-insured persons (passengers, for example). White v.Georgia Casualty Surety Insurance Co., 520 So.2d 140 (Ala. 1987).
The second change put a cap on "stacking." The legislature recognized that this cap, of course, had to be restricted to like coverages provided by the same insurer, thus the use of the term "under one contract of insurance." It seems to me that the legislature could hardly have stated its purpose more simply or more accurately.
Have we forgotten the most fundamental of all rules of statutory construction? If one construction is nonsensical and unworkable and another is both sensible and workable, the Court will adopt the construction that makes sense and works. Exparte Hayes, 405 So.2d 366 (Ala. 1981). The Court's construction of this statute forces upon the insurance industry, as well as upon the insureds, the abandonment of legitimate and practical choices between multiple-vehicle policies and single-vehicle policies, because any such choice might produce unintended results with respect to uninsured motorist coverages as statutorily mandated.