## IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2000-CA-01427-SCT

*DRUCILLA L. ('DRU') McDANIEL*

*v.*

*SHAKLEE U.S., INC.; KENNETH F. JACKSON; AND TRANSAMERICA INSURANCE GROUP*

| | |
|---|---|
| DATE OF JUDGMENT: | 08/14/2000 |
| TRIAL JUDGE: | HON. BARRY W. FORD |
| COURT FROM WHICH APPEALED: | LEE COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | ROGER M. TUBBS |
| | PAUL N. JENKINS, JR. |
| ATTORNEYS FOR APPELLEES: | DAVID B. McLAURIN |
| | WILLIAM C. REEVES |
| NATURE OF THE CASE: | CIVIL - INSURANCE |
| DISPOSITION: | REVERSED AND REMANDED - 10/31/2001 |
| MOTION FOR REHEARING FILED: | 11/15/2001; denied 2/21/2002 |
| MANDATE ISSUED: | 2/28/2002 |

### EN BANC.

### DIAZ, JUSTICE, FOR THE COURT:

¶1. On December 21, 1995, Drucilla L. McDaniel (McDaniel) filed suit in the Lee County Circuit Court against Kenneth Jackson (Jackson); Shaklee U.S., Inc.(Shaklee); Transamerica Insurance Group (TIG); and ABC Insurance Company (an unknown entity which may or may not have been partially responsible). The complaint alleged that McDaniel suffered property damage, as well as bodily injury, in a collision occurring as a result of Jackson's negligent driving. The details and extent of McDaniel's injuries are irrelevant to the matter presently before this Court. The suit also claims that Shaklee and TIG are liable for damages as the uninsured motorist insurance carriers for McDaniel. Both sides filed motions for summary judgment. The circuit court granted Shaklee's motion for summary judgment. McDaniel moved for an interlocutory appeal, which was denied. McDaniel now appeals the award of summary judgment and raises the issue of whether she may "stack" the uninsured/underinsured coverage contained in Shaklee's fleet policy.

### FACTS

¶2. On December 22, 1994, McDaniel and Jackson were involved in an accident when Jackson's car swerved into a lane of oncoming traffic and collided with McDaniel's vehicle. As previously stated, the circumstances and events surrounding the accident that is the basis for this suit are immaterial to the question before this Court today. The relationship between the parties is what is truly germane.

¶3. At the time of the accident, Jackson had $25,000 in liability insurance. The limits of this policy were offered to McDaniel and accepted. However, McDaniel's injuries and resultant damages total considerably

more than $25,000.

¶4. The day of the accident, McDaniel was driving an automobile which is a part of a fleet of vehicles owned by Shaklee. Shaklee is self-insured for claims up to $500,000 and, in addition, purchased a comprehensive policy from TIG. As an incentive to its distributors, Shaklee loans out automobiles from its fleet to its independent distributors who qualify as "Sales Leaders" under the "Bonus Car" program. McDaniel qualified as a Sales Leader. Under the Bonus Car program, McDaniel paid Shaklee $352.49 per month for the car, as well as $75.60 for comprehensive insurance, medical payments, and uninsured/underinsured motorist coverage (UM) of $10,000 per person/$20,000 per accident. In turn, Shaklee paid TIG a single premium covering all insurance on its entire fleet of vehicles. Thus, there is only one policy, covering all the automobiles rather then individual policies for each car in the program.

¶5. In her suit, McDaniel asserted that she should be able to "stack," or aggregate, the UM coverage of all of the vehicles in Shaklee's fleet, a total of 1758 vehicles (although not all carry UM coverage because, unlike Mississippi, some states do not require it). Motions for summary judgment were filed, and the trial judge granted the motion in favor of Shaklee. McDaniel now appeals.

## STANDARD OF REVIEW

¶6. When reviewing the granting or the denying of summary judgment, we use the same standard employed by the trial court. We conduct de novo review of orders granting or denying summary judgment and look at all the evidentiary matters before it--admissions in pleadings, answers to interrogatories, depositions, affidavits, etc. The evidence must be viewed in the light most favorable to the party against whom the motion has been made. ***Lumberman's Underwriting Alliance v. City of Rosedale,*** 727 So. 2d 710, 712-13 (Miss. 1998). If any triable issues of material fact exist, the lower court's decision to grant summary judgment will be reversed. ***Brown v. Credit Ctr., Inc.***, 444 So.2d 358, 362 (Miss.1984).

## DISCUSSION

### I. WHETHER McDANIEL MAY STACK THE UNINSURED/UNDERINSURED COVERAGE CONTAINED IN SHAKLEE'S FLEET POLICY.

¶7. This question has been the topic of considerable litigation as of late and has been a thorn in the sides of many an attorney, client, and judge, including those on this bench, for years. There is no shortage of caselaw dealing with the matter. The difficulty stems from the apparent contradictions and ambiguities within the caselaw. Furthermore, even those cases that seem to establish a bright line rule are so fact specific that anytime one minor detail or fact changes, the case loses much of its instructiveness. Hopefully, by using the principles and guidelines set forth in earlier cases, we may now be able to establish some hard and fast rules as to when stacking is permitted and when it is not.

¶8. At the heart of UM stacking claims is the Mississippi Uninsured Motorist Act, which provides in part:

> (1) No automobile liability insurance policy or contract shall be issued. . . unless it contains an endorsement or provisions undertaking to *pay the insured all sums which he shall be legally entitled to recover as damages for bodily injury* or death from the owner or operator of an uninsured motor vehicle, within limits which shall be no less than those set forth in the Mississippi Motor Vehicle Safety Responsibility Law. . .

Miss. Code Ann. § 83-11-101 (1999) (Emphasis added). The UM Act defines an "uninsured motor vehicle" as one whose "liability insurer. . . has provided limits of bodily injury liability for its insured which are less than the limits applicable to the injured person provided under his uninsured motorist coverage." Miss. Code Ann. § 83-11-103 (1999). We have held that the statutes should be liberally construed, due in part to their remedial nature. *Stevens v. USF&G Co.*, 345 So. 2d 1041, 1043 (Miss. 1977). As such, and in advancement of the public interest, the concept of stacking, or aggregating policies, as a viable method of ensuring complete recovery, began to gain favor. *See Harthcock v. State Farm Mut. Auto. Ins. Co.*, 248 So. 2d 456 (Miss. 1971) (holding that a plaintiff could stack multiple policies in order to fully recover). Over the years, the concept continued to expand, and this Court allowed stacking in a wider variety of cases.

¶9. Under *Brown v. Maryland Cas. Co.*, 521 So. 2d 854 (Miss. 1987), the plaintiff, a permissible user, was allowed to stack the uninsured motorist policies for all three cars belonging to the named insured. *Id.* Expanding upon the ideas set out in *Brown*, this Court, in *Wickline v. USF&G Co.*, 530 So. 2d 708 (Miss. 1988), discouraged the practice of distinguishing between classes of insured (i.e. Class I = named insured and Class II = passengers and permissive users). In so holding, this Court ruled that "a guest passenger injured by an uninsured motorist is entitled to stack the UM coverage of all vehicles insured by the policy which insures the host vehicle." Paige Craig, *Automobile Insurance - Uninsured Motorists - Public Policy Demands that Anti-Stacking Provisions Be Held Void as Against Public Policy*, 67 Miss. L.J. 585, 592 (1997) (citing *Wickline*, 530 So. 2d at 715). The *Wickline* philosophies were carried over into the realm of commercial policies in *Cossitt v. Nationwide Mut. Ins. Co.*, 551 So. 2d 879 (Miss. 1989), in which this Court held that no distinctions should be made between personal and commercial policies. *Id.* The broad language led to a Borden's, Inc., employee being permitted to stack the uninsured motorist coverage of all 7,000 Borden's vehicles. *Preferred Risk Ins. Co. v. Ins. Co. of N. Am.*, 824 F. Supp. 614 (S.D. Miss. 1993).

¶10. In reaction to these cases, insurance companies began writing their policies and premium schemes in a manner to disallow stacking. This Court, in *USF&G Co. v. Ferguson*, 698 So. 2d 77 (Miss. 1997), responded that "[w]e now affirmatively declare that the public policy of this State mandates stacking of UM coverage for every vehicle covered under a policy, regardless of the number or amount of the premium(s) paid for UM coverage." *Id.* We continued, "we will allow stacking of uninsured motorist coverage for all cars covered under insurance policies for UM coverage." *Id.* at 82. An observer writing on the subject noted:

> The opinion in Ferguson evidences the supreme court's intolerance of the insurance industry, as a whole, rewriting its policies to circumvent the court's decisions. The opinion also indicates the desire of the court to fulfill the intent of the UM statute by giving the insured every possible opportunity to recover the full amount of his damages when injured by an uninsured or underinsured motorist. Thus, with the invalidation of anti-stacking provisions in Mississippi, courts will mandate stacking of coverage of multiple vehicles under one policy to the extent of the insured's damages.

Craig, *supra*, 67 Miss. L.J. at 598. As the writer correctly pointed out, this Court interprets the UM Act as a positive method in allowing injured parties full recovery.[1]

¶11. We now turn to the case sub judice. Since the matter concerns the granting of a motion for summary judgment, we should first look to the arguments in support of the motion, keeping in mind the applicable

standard of review. **Brown**, 444 So.2d at 362.

¶12. As was previously stated, the problem arising in most stacking suits is the subtle differences that seem to make earlier decisions less instructive, and the present situation is no different. Shaklee argues that the subtle differences in this case do not allow stacking of all of its UM policies. First, Shaklee contends that the policy is clear and unambiguous, and only covers the car McDaniel was driving. It argues that under the TIG policy, McDaniel is a Class I insured as to her vehicle only and is not even a Class II insured as to the rest of the autos owned by Shaklee. As such, McDaniel should not be afforded the broad coverage of stacking, as would a named insured. Since Jackson's liability insurance is greater than the UM coverage of McDaniel's car, she is not entitled to collect on any UM policy. Second, while Shaklee owns the automobile, it is not part of a "fleet," per se, because McDaniel pays monthly for its use, as well as paying for the insurance individually. The contention is that McDaniel personally pays for one policy and is now trying to stack multiple policies for which she is not connected nor entitled. In addition, Shaklee points out that McDaniel is an independent distributor and not an employee driving a fleet vehicle. Essentially, the argument is that McDaniel cannot stack these policies and thus, Jackson does not fall under the definition of an uninsured/underinsured motorist. Therefore, McDaniel should not be allowed to collect UM insurance at all, nonetheless collect from stacking. Apparently, the trial court agreed with this assessment and granted Shaklee's motion for summary judgment.

¶13. Put simply, the trial court erred in granting the summary judgment motion. No matter what name a scheme is given; the nature of the agreement is the same. The automobile driven by McDaniel is still owned and operated by Shaklee, even though it is called a "Bonus Car" loan. In addition, Shaklee attempts to confuse the situation by speaking of two insurance policies: one from Shaklee paid for by McDaniel and the TIG policy paid for by Shaklee. However, Shaklee is not an insurance company, and the Bonus Car handbook and other related information do not amount to a bona fide insurance policy. In truth, it appears as if Shaklee collects and pools the money the Bonus Car users pay for uninsured motorist insurance, and in turn, it pays a single, large premium to TIG for the actual insurance. Thus, one UM policy, the one issued by TIG, exists and covers all of the cars owned by Shaklee. Furthermore, McDaniel's status as an independent distributor is immaterial, just as the commercial nature of the policy is immaterial.

¶14. Not only do these few incorrect assumptions warrant a reversal of summary judgment. A more accurate examination of the situation, in the light of previous decisions, reveals that public policy mandates stacking in the present case.

¶15. Both parties make much of McDaniel's status as a Class I or Class II insured, and base much of their arguments on this classification. However, a review of the pertinent statute as well as the holdings in **Brown** and **Wickline** reveal that there is no basis for insured classification whatsoever.

> The term "insured" shall mean the named insured and, while resident of the same household, the spouse of any such named insured and relatives of either, while in a motor vehicle or otherwise, and any person who uses, with the consent, expressed or implied, of the named insured, the motor vehicle to which the policy applies, and a personal representative of any of the above.

Miss. Code Ann. § 83-11-103(b) (1999). There is no question that McDaniel was using the car with the consent of Shaklee. As such, McDaniel is a statutory "insured" for purposes of UM coverage. In addition, the TIG policy specifically includes "Sales Leader"s as named insured, although it attempts to restrict the available coverage. Thus, there exists an ambiguity: Is a "sales leader" a named insured or not? "Any

ambiguities in an insurance contract must be construed against the insurer and in favor of the insured and a finding of coverage." **Nationwide Mut. Ins. Co. v. Garriga**, 636 So. 2d 658, 662 (Miss. 1994). Under both the policy and statutory definitions, McDaniel fits the description of insured as pertains to UM coverage and should be afforded all of the benefits thereof.

¶16. The next question is whether Jackson, the negligent driver, now qualifies as an uninsured motorist. In order to determine that, we compare "the amount of uninsured motorist coverage available to the amount of liability insurance available." **Wickline**, 530 So. 2d at 712. "Under the Mississippi UM statute as amended, stacking of the injured person's limits is allowed for the purpose of qualifying the tortfeasor as an underinsured motorist." **Id.** at 713. As an "insured" under the UM Act, McDaniel should be allowed to stack all of the coverage under the TIG policy in order to qualify Jackson as an underinsured motorist. Thus, Jackson is a uninsured motorist as defined by statute. Miss. Code Ann. § 83-11-103(c)(iii) (1999).

¶17. As aptly put by the Court in **Brown**, "[t]he justification for stacking lies not in who has paid for the extra protection, but rather that the protection has been purchased. The benefits flow to all persons insured." **Brown**, 521 So. 2d at 856 (quoting **Sayers v. Safeco Ins. Co.**, 628 P.2d 659, 662 (Mont. 1981)). As clearly stated in the statute and found again in caselaw, the purpose of the UM Act and UM coverage is to insure that injured parties can receive "all sums which he shall be legally entitled to recover as damages for bodily injury." Miss. Code Ann. § 83-11-101(1999). *See also* **Wickline**, 530 So. 2d at 715. Thus, public policy demands stacking be allowed in the present case.

## CONCLUSION

¶18. Given our standard of review in cases involving summary judgement, the granting of Shaklee's motion was clear error by the trial court. McDaniel fits both the statutory and policy definitions of "insured" and should be allowed to stack the UM coverage of all vehicles under that policy. Thus, Jackson qualifies as an underinsured motorist, and McDaniel should be able to collect from the stacked policies accordingly. Therefore, the judgment of the Lee County Circuit Court is reversed, and this case is remanded to that court for further proceedings in harmony with this decision.

¶19. **REVERSED AND REMANDED.**

> **PITTMAN, C.J., McRAE, P.J., WALLER AND EASLEY, JJ., CONCUR. SMITH, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY MILLS AND COBB, JJ. BANKS, P.J., NOT PARTICIPATING.**

> **SMITH, JUSTICE, DISSENTING:**

¶20. In my view, McDaniel should be precluded from stacking the uninsured motorist coverage contained in Shaklee's fleet policy. I would therefore affirm the trial court's grant of summary judgment in favor of Shaklee. Because the majority concludes that McDaniel is permitted to stack the coverage, I respectfully dissent.

¶21. Class II insureds should not be permitted to stack coverage in situations involving large commercial fleets. The courts of other jurisdictions are virtually unanimous in refusing to allow stacking in this context. **Harris v. Magee**, 573 So. 2d 646, 652 (Miss. 1990) (citing **Aetna Cas. & Sur. Co. v. Craig**, 771 P.2d 212 (Okla.1989) (Employees, as Class II insureds, are only entitled to the coverage afforded by the particular vehicle occupied when injured and could not stack coverage for all vehicles covered in a fleet

insurance policy); ***Stanton v. American Mut. Liability Ins. Co.***, 747 P.2d 945 (Okla.1987) (Class II insured could not stack uninsured motorist coverage for all of employer's 379 vehicles insured under employer's fleet policy but was entitled to coverage provided for the vehicle he was driving at the time of the accident); ***Howell v. Harleysville Mut. Ins. Co.***, 305 Md. 435, 505 A.2d 109 (1986) (Class II insured was not entitled to stack commercial fleet policy which insured 19 vehicles); ***Murphy v. Milbank Mut. Ins. Co.***, 388 N.W.2d 732 (Minn.1986) (Class II insured, a corporate employee, could not stack under fleet policy covering employer's 2,000 vehicles. One must be an insured of all vehicles in order to stack coverage. Since employee was insured only by virtue of his occupancy in one vehicle, he was only insured as to that vehicle); ***Fuqua v. Travelers Ins. Co.***, 734 F.2d 616 (11th Cir.1984) (Automobile dealer's employee, a Class II insured, was not allowed to stack uninsured motorist coverage of 27 "dealer plate" automobiles which were insured under the same commercial fleet policy); ***Burke v. Aid Ins. Co.***, 487 F. Supp. 831 (D. Kan. 1980) (Class II insureds were not allowed to stack commercial fleet policy which insured 44 vehicles); ***Ohio Cas. Ins. Co. v. Stanfield***, 581 S.W.2d 555 (Ky. 1979) (Class II insured was precluded from stacking uninsured motorist coverage under his employer's automobile fleet policy which covered 63 vehicles); ***Holloway v. Nationwide Mut. Ins. Co.***, 376 So. 2d 690 (Ala.1979) (Uninsured motorist coverage for employer's entire fleet of vehicles was not available to Class II insured, who was also the son of the corporation's principle stockholder, who was killed while driving one of the corporation's cars); ***Lambert v. Liberty Mut. Ins. Co.***, 331 So. 2d 260 (Ala.1976) (Insured who was insured by virtue of his occupancy of employer's vehicle under a fleet policy issued to his employer was not entitled to stack employer's 1,699 vehicles which were insured under same policy); ***Cunningham v. Ins. Co. of N. Am.***, 213 Va. 72, 189 S.E.2d 832 (1972) (Class II insured could not stack 4,368 state owned vehicles covered under a single fleet policy).

¶22. The rationale most often advanced by the jurisdictions which preclude Class II insureds from stacking under commercial fleet policies compares the potential for high exposure to the premium actually paid. ***Harris*** at 653 (citing ***Cossitt v. Nationwide Mut. Ins. Co.***, 551 So. 2d 879, 884 (Miss. 1989)). In the case at bar, McDaniel paid Shaklee $75.60 per month for comprehensive insurance, medical payments, and uninsured motorist coverage of $10,000 per person and $20,000 per accident. Shaklee's fleet includes 1,758 vehicles. Thus, under the reasoning employed by McDaniel and accepted by the majority, the insurer's exposure as to each vehicle insured in Shaklee's fleet is $17,580,000 ($10,000 x 1,758).

¶23. As recognized by this Court in ***Brown v. Maryland Cas. Co.***, 521 So. 2d 854, 856 (Miss. 1987), the justification for stacking is firmly imbedded in the principle that an injured party should get the full benefit of that which was bargained for, regardless of who paid for the extra protections. ***Brown*** at 856 (citing ***Sayers v. Safeco Ins. Co.***, 628 P.2d 659, 662 (Mont. 1981). *See also **Wickline v. USF&G Co.***, 530 So. 2d 708, 714 (Miss. 1988) (stating that where multiple premiums are paid, multiple coverages should be available). "Stacking is the logical result of honoring the *presumed* expectations of the insured, i.e. that having paid for coverage on multiple vehicles, the insured is entitled to the benefit of that coverage." ***USF&G Co. v. Ferguson***, 698 So. 2d 77, 83 (Miss. 1997) (Lee, C.J., specially concurring). This Court observed in ***In re Koestler***:

> The theory ... without exception has been that insurer and insured have entered two or more contracts covering the same eventuality and that the insured may enforce these contracts according to their terms. To be sure, these contracts may have been encouraged by statute, and at times we have found ambiguities and resolved them in the insureds' favor. This does not alter the fact that the legal origin of stacking is contract and not statute.

*In re Koestler*, 608 So. 2d 1258, 1261 (Miss.1992) (emphasis added) (discussing *Thiac v. State Farm Auto. Ins. Co.*, 569 So. 2d 1217 (Miss.1990); *Cossitt v. Nationwide Mut. Ins. Co.*, 551 So. 2d 879 (Miss.1989); *Brown v. Maryland Cas. Co.*, 521 So. 2d 854 (Miss.1987); *State Farm Mut. Auto. Ins. Co. v. Kuehling*, 475 So. 2d 1159 (Miss.1985), and *Government Employees Ins. Co. v. Brown*, 446 So. 2d 1002 (Miss.1984)), *rev'd on other grounds*, *Nationwide Mut. Ins. Co. v. Garriga*, 636 So. 2d 658 (Miss.1994).

¶24. The conclusion of the majority allowing stacking in this instance stretches this principle to a point of absurdity. In cases involving commercial fleet policies, it can hardly be argued that the amount of coverage sought by parties such as McDaniel could reasonably be supported by the premium which has been paid. *See Howell v. Harleysville Mut. Ins. Co.*, 505 A.2d 109, 113 (Md. 1986). Again, under the majority's reasoning, the insurer's liability as to each vehicle insured in Shaklee's fleet of 1,758 vehicles is $17,580,000 ($10,000 x 1,758). Yet, pursuing the logic indulged in smaller risk cases, the majority concludes that all of this coverage would be available for a premium of $75.60. With all due respect to the majority, this result is an absurdity, which no company could possibly afford to insure. For this reason, I respectfully dissent.

**MILLS AND COBB, JJ., JOIN THIS OPINION.**

1. It is important to note that these decisions do not translate into a windfall for plaintiffs; an injured party is still not allowed to recover more than he/she has sustained in damages.