513 So.2d 927 (1987)
PIONEER LIFE INSURANCE COMPANY OF ILLINOIS
v.
Shirley F. MOSS.
No. 56629.
Supreme Court of Mississippi.
September 30, 1987.
Arthur F. Jernigan, Gerald, Brand, Watters, Cox & Hemleben, Jackson, for appellant.
Rex Gordon, Sr., David C. Frazier, Gordon, Myers & Frazier, Pascagoula, Gerald Dickerson, Lucedale, for appellee.
Before WALKER, C.J., and ROBERTSON and ANDERSON, JJ.
*928 WALKER, Chief Justice, for the Court:
This case is before the Court on appeal from the Circuit Court of George County, Mississippi where, on November 9, 1984 a jury returned a verdict in favor of Shirley Moss and against Pioneer Life Insurance Company in the amount of $100.00 actual damages and $50,000.00 punitive damages. From this adverse decision, Pioneer Life Insurance Company appeals.

FACTS
On March 20, 1981, Pioneer Life Insurance Company of Illinois (hereinafter "Pioneer Life") issued a medical insurance policy to Shirley F. Moss (hereinafter "Mrs. Moss"). On February 7, 1982, while the policy was in effect, Mrs. Moss was admitted to Singing River Hospital suffering from chest pains. Mrs. Moss was confined at Singing River Hospital from February 7th through February 10th while diagnostic tests were performed. The discharge summary of Singing River Hospital recorded the results of the testing, including an echocardiogram, disclosing that Mrs. Moss was diagnosed as having a prolapsing mitral valve. On March 26, 1982, Mrs. Moss filed her claim form with Pioneer Life, but because the hospital chart was incomplete, Pioneer Life was unable to complete its processing until June 1, 1982. The medical expenses submitted by Mrs. Moss are set forth in tabular form below:

 MEDICAL PROVIDER DATE OF TREATMENT EXPENSES SUBMITTED
 Singing River Hosp. 2/7 - 2/10 $1,114.62
 Dr. Samuel Simmons 2/2 - 2/12 212.00
 Mobile Infirmary 2/10 170.00

On June 14, 1982, a claims adjuster for Pioneer Life, after reviewing the medical records calculated the maximum benefits available to Mrs. Moss under her medical insurance policy. The medical expenses submitted and the benefits paid in June 1982 are set forth in tabular form below:

 MEDICAL PROVIDER BENEFITS PAID EXPENSES SUBMITTED
 Singing River Hosp. $821.64 $1,114.62
 Dr. Samuel Simmons 30.00 212.00
 Mobile Infirmary - - 170.00
 _______ _________
 TOTAL $851.64 $1,496.62

The adjuster did not calculate any benefits toward the Mobile Infirmary bill of $170.00 for an echocardiagram test on February 10, (which, as shall be seen subsequently is the focal point of this action), in that, based upon her review of the records and claim forms, she believed the $170.00 bill was for professional component charges to analyze the results of an echocardiagram test performed on an in-patient basis at Singing River Hospital on February 10th, and therefore was not a covered benefit under the policy. This belief stemmed from the fact that both the date of discharge from Singing River Hospital and the date the bill from Mobile Infirmary were February 10, 1982. Additionally, the discharge summary from Singing River Hospital included as a component the echocardiagram test. Unbeknownst to Pioneer Life, what had actually transpired was that Mrs. Moss was discharged from Singing River Hospital on February 10th, whereupon she went directly to the Mobile Infirmary in Mobile, Alabama. On that same date, Mobile Infirmary performed the echocardiagram on an out-patient basis, (which Pioneer Life now admits, and at the trial below admitted, to be a covered expense under the policy provisions up to $100.00).
Due to Pioneer Life's failure to make payment on the Mobile Infirmary bill, Mrs. Moss began to receive letters and phone calls demanding payment, first from Mobile Infirmary and subsequently from bill collectors. *929 In an effort to resolve the situation, Mrs. Moss contacted Pioneer Life on several occasions through letters and by telephone inquiring as to the status of the claim. Pioneer Life's response was that the maximum benefits available under the policy had already been paid. Thereafter, Mrs. Moss retained counsel to assist her in procuring payment of her outstanding debts. Said counsel sent three (3) letters to Pioneer Life regarding Mrs. Moss, and Pioneer Life received said letters on December 7, 1982, January 4, 1983, and January 12, 1983. The first and second letters, simply put, requested that Pioneer Life advise Mrs. Moss of the status of the claim. The third letter informed Pioneer Life that their insured was being harassed for payment by a collection agency, and asked directly, "All I want to know from you is whether you are going to pay these long past due claims or not." Pioneer Life responded to each letter on December 23, 1982, January 24, 1983, and February 16, 1983. The three (3) response letters, in essence, stated the figures that can be found in the second table previously set out in this discussion, and that such amounted to the maximum benefit allowed. Said letters contained a standard closing clause that, "We sincerely hope this letter answers your questions in regard to this; however, if you should have further questions or comments regarding this claim, please contact us."
On July 22, 1983, Mrs. Moss filed her complaint against Pioneer Life seeking contract damages in the amount of $248.00, (including an element of the Singing River bill not an element of this appeal), and punitive damages in the amount of $150,000.00. It was at this time that Pioneer Life first learned of the fact that Mrs. Moss had been discharged from Singing River Hospital on February 10, 1982, and taken directly to Mobile Infirmary, where the echocardiagram was performed on an out-patient basis. Pioneer Life immediately offered to pay the entire balance of any outstanding medical bills, plus expenses and reasonable attorneys' fees up to that point. The offer was refused. Pioneer Life then filed an answer admitting it owed $100.00 and tendered such to the clerk of the court.
On November 9, 1984, a trial on the merits was heard before a jury in the Circuit Court of George County, Mississippi, for which a judgment was rendered against Pioneer Life in the sum of $100.00 actual damages for the amount owed under the policy for the out-patient treatment at Mobile Infirmary, and $50,000.00 as punitive damages. From this adverse decision, Pioneer appeals, making six (6) assignments of error, of which only one (1) merits discussion.

I. DID THE LOWER COURT ERR IN SUBMITTING TO THE JURY THE ISSUE OF PUNITIVE DAMAGES?
This Court has grappled with the problem of the submission of the issue of punitive damages to the jury ever since Standard Life Insurance Company of Indiana v. Veal, 354 So.2d 239 (Miss. 1977) was handed down. In Veal, this Court stated, in regard to the imposition of punitive damages in a bad faith context that:
If an insurance company has a legitimate reason or an arguable reason for failing to pay a claim, punitive damages will not lie.
Veal, at 248. But, the question of the proper manner in which to submit to the jury the punitive damages issue went unanswered.
Reserve Life Insurance Co. v. McGee, 444 So.2d 803 (Miss. 1983) answered the question, to some extent, by holding that the trial court must first determine as a matter of law whether the issue of punitive damages should be submitted to the jury. In McGee, the Court held, in pertinent part, that:
At the conclusion of the evidence, the trial court at the request of the defendant, should determine whether or not, as a question of law, the insurer had a legitimate or arguable reason to deny payment of the claim... . If the trial court finds that such a legitimate or arguable claim existed, as shown by the evidence, then the trial court should refuse to grant a punitive damages instruction even though it submits to the jury *930 the question of whether or not the insurer owed the compensatory claim for which proofs of loss were filed.
McGee, at 809. Therefore, the issue of punitive damages should not reach the jury unless reasonable minds could differ as to the insurance company having a legitimate or arguable reason for denying the claim. Blue Cross & Blue Shield of Mississippi, Inc. v. Campbell, 466 So.2d 833 (Miss. 1984).
Still, even with the guidance of the above cited authorities, there remains to this day much confusion and misunderstanding in the lower courts as to when the punitive damage issue is to be presented to the jury based upon the "legitimate or arguable reason" standard. In trying to remedy this situation, we find guidance and authority in State Farm Fire and Casualty Co. v. Simpson, 477 So.2d 242 (Miss. 1985), where we stated, in addressing this standard that:
We are of the opinion the term "legitimate or arguable reason," although spawning much comment in our cases and in briefs and arguments of counsel, is nothing more than an expression indicating the act or acts of the alleged tortfeasor do not rise to the heightened level of an independent tort. Additionally, the very term expresses the holding of this Court establishing a distinction between ordinary torts, the product of forgetfulness, oversight, or the like; and heightened torts which are the product of gross, callous or wanton conduct, or, if intentional are accompanied by fraud or deceit. (citation omitted) (emphasis added)
Simpson at 250.
As previously mentioned, Standard Life v. Veal, supra, provides that if an insurance company has a legitimate or arguable reason for denying a claim, then such will utterly preclude the submission of the issue of punitive damages to the jury But, the contrary of this statement is not true. The fact that an insurance company lacks a legitimate or arguable reason for denying a claim does not automatically lead to the conclusion that the issue of punitive damages should be submitted to the jury. Simpson at 250. In the absence of an arguable reason for denying a claim, the trial court still must determine whether there is a jury issue as to the insurer's having committed a willful or malicious wrong, or acted with gross or reckless disregard for the insured's rights. If not, the question of punitive damages should not go to the jury.
Returning to the case presently at bar, we observe that Pioneer Life, at the close of all evidence, tendered to the lower court as its first instruction a peremptory instruction that the jury find for Pioneer Life.[1] The trial court refused the instruction, and determined that the issue of punitive damages should be presented to the jury. The facts relevant to this determination have been previously stated, but to recapitulate, the adjuster testified that she failed to realize that the echocardiogram was actually performed at Mobile Infirmary as an out-patient on February 10, 1982 due to the fact that the hospital chart showed that Mrs. Moss was still confined at Singing River Hospital on that date. Additionally, Pioneer Life lists several additional factors which would amount to a "legitimate or arguable reason" for believing the echocardiogram was performed at Singing River Hospital and only analyzed at Mobile Infirmary: 1) The claim form signed by Mrs. Moss on March 24, 1982 did not list Mobile Infirmary as a place of treatment; 2) The Singing River Hospital bill confirms that Mrs. Moss was hospitalized there on February 10, 1982  the same day the echocardiogram was performed; 3) The Singing River Hospital bill shows an in-patient charge of $269.60, leading Pioneer Life to believe that such charge was for performing the echocardiogram; 4) The Mobile Infirmary bill lists eleven (11) x-ray department radiologists and five (5) clinical pathologists, causing Pioneer Life to believe such was for professional component charges; 5) The discharge summary of Singing River Hospital lists the echocardiogram, *931 states the results, but not the location of its taking, and bases the discharge diagnosis on the test (Pioneer Life claims this factor to be the most conclusive).
It is upon a consideration of the above factors that Pioneer Life argues its failure to pay the claim of Mrs. Moss was a mere clerical error and an honest mistake not warranting the imposition of punitive damages. Consolidated American Life Insurance Company v. Touche, 410 So.2d 1303, 1306 (Miss. 1982). As to the denial of Mrs. Moss's claim during January 1983, when counsel for Mrs. Moss wrote three (3) letters to Pioneer Life inquiring as to the nonpayment of the claim, it must be remembered that each of these letters was answered fully by Pioneer Life to the effect that the maximum benefits available had been paid, (for a more complete discussion of the contents of these letters, can be found in the FACTS, supra, portion of this opinion). Pioneer Life continued to deny coverage until it learned, with the initiation of this action, that Mrs. Moss had in fact been an out-patient at Mobile Infirmary in Mobile, Alabama.
Under the above facts, there was no evidence of gross, callous, or wanton conduct on the part of Pioneer Life toward its insured that would present a jury question on punitive damages and the lower court erred in submitting that issue to the jury.
AWARD OF PUNITIVE DAMAGES IS REVERSED AND RENDERED; AWARD OF ACTUAL DAMAGES IS AFFIRMED.
ROY NOBLE LEE and HAWKINS, P.JJ., and PRATHER, ROBERTSON, SULLIVAN, ANDERSON and GRIFFIN, JJ., concur.
SULLIVAN, J., specially concurring with written opinion joined by DAN M. LEE, PRATHER and ROBERTSON, JJ.
ROBERTSON, J., specially concurring with written opinion joined by PRATHER and ANDERSON, JJ.
ROBERTSON, Justice, concurring:
I concur in the result and join what has been written by Justice Sullivan, concurring specially  with one exception.
There is not one word in our law that precludes a plaintiff in a bad faith refusal case recovering ordinary tort damages assuming, of course, proper proof. Such a remedy is implicitly recognized in Travelers Indemnity Co. v. Wetherbee, 368 So.2d 829, 836 (Miss. 1979) and Bellefonte Insurance Co. v. Griffin, 358 So.2d 387 (Miss. 1978). See Peel v. American Fidelity Assurance Co., 680 F.2d 374, 376 (5th Cir.1982).
Bad faith refusal is a tort. Employers Mutual Casualty Co. v. Tompkins, 490 So.2d 897, 902, 906 (Miss. 1986); Aetna Casualty and Surety Co. v. Day, 487 So.2d 830, 832 (Miss. 1986); Weems v. American Security Insurance Co., 486 So.2d 1222, 1226 (Miss. 1986). Whoever heard of a tort where the plaintiff was not entitled to recover such damages as he may prove caused by defendant's tortious conduct? Such damages ought include economic loss (including attorney fees and legal expenses reasonably and necessarily incurred) and emotional distress. See Curtis, Damage Measurements For Bad Faith Breach of Contract: An Economic Analysis, 39 Stanford L.Rev. 161 (1986); Blue Cross & Blue Shield of Mississippi v. Campbell, 466 So.2d 833, 850 (Miss. 1984) (Robertson, J., concurring); see also Bankers Life & Casualty Co. v. Crenshaw, 483 So.2d 254, 298-99 (Miss. 1984) (Robertson, J., dissenting).
Because Plaintiff Moss did not plead or prove extra-contractual actual damages, I concur in the judgment announced by the majority.
PRATHER and ANDERSON, JJ., join this opinion.
SULLIVAN, Justice, specially concurring:
I concur with the majority in the result reached but write separately because it is my view that as between the plaintiff and the adjuster for the defendant, the burden *932 was upon the adjuster and not the defendant to investigate the question of the Mobile Infirmary claim much more thoroughly than the company did in this case.
When Mrs. Moss contacted the company on several occasions by letter and by telephone inquiring as to the status of the claim the company should have been placed on notice that further investigation by their adjuster was called for. Even if this were not the case when the company received three letters from counsel for Mrs. Moss, surely they should have known that further investigation was called for and it would have expended no great cost in finances or time for the adjuster to have checked with Mobile Infirmary rather than to maintain the arbitrary position that nothing further was due under the policy.
In my view in order to satisfy Standard Life Insurance Co. of Indiana v. Veal, 354 So.2d 239 (Miss. 1977), in order to claim a legitimate or arguable reason for failing to pay the claim the company must do substantially more than was done here, to verify a claim made against it by one of its own policyholders. The duty of the company toward its policyholder requires more from the company than the facts of this record show.
Because of the "boiler plate" response of Pioneer Life to the claim of Mrs. Moss, Mrs. Moss was forced to endure phone calls first from Mobile Infirmary and subsequently from bill collectors demanding payment of a claim covered by her insurance. Furthermore, Mrs. Moss was required to continuously contact Pioneer Life asking them to pay a claim which they legitimately owed and not only refused to pay but refused to thoroughly investigate. Mrs. Moss was put to the further expense of employing counsel who also sought to get Pioneer Life to do that which the company had already contracted to do. Such cavalier treatment of a policyholder with a claim against a company cannot be said to be good faith dealing and certainly cannot give rise to a legitimate or arguable reason for failing to pay a claim.
I concur with the majority that this is not an appropriate case for punitive damages not because of Reserve Life Insurance Co. v. McGee, 444 So.2d 803 (Miss. 1983); Standard Life Insurance Co. of Indiana v. Veal, supra; or State Farm Fire and Casualty Co. v. Simpson, 477 So.2d 242 (Miss. 1985). I concur because when Pioneer Life finally learned what it should have learned when the claim was initially filed, that Mrs. Moss had been discharged from Singing River Hospital on February 10 and taken directly to Mobile Infirmary the company immediately offered to pay the entire balance of any outstanding medical bills plus expenses and attorneys fees up to that point.
In my view this case illustrates the need for a tier of damages that lies between contract damages and punitive damages. This concept has been discussed by this Court previously in other opinions[1] but it is not, though perhaps it should be, the law in this State. I consider this case a classic one for the awarding of damages less than punitive but more than actual. Because I recognize that such is not the law in this jurisdiction and for the reasons set forth hereinabove, I therefore concur in the result reached by the majority.
DAN M. LEE, PRATHER and ROBERTSON, JJ., join this opinion.
NOTES
[1] The comments to Miss.R.Civ.P. 50 provide that the former peremptory instruction practice has been superseded by the motion for a directed verdict.
[1] See Blue Cross & Blue Shield of Miss., Inc. v. Campbell, 466 So.2d 833, 847 (Miss. 1984).