# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 94-CA-01283-SCT

*UNITED STATES FIDELITY AND GUARANTY COMPANY*

*v.*

*DOROTHY FERGUSON*

| | |
|---|---|
| DATE OF JUDGMENT: | 12/06/94 |
| TRIAL JUDGE: | HON. R. KENNETH COLEMAN |
| COURT FROM WHICH APPEALED: | LAFAYETTE COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | MARC A. BIGGERS |
| | LONNIE D. BAILEY |
| ATTORNEY FOR APPELLEE: | JOHN BOOTH FARESE |
| NATURE OF THE CASE: | CIVIL - INSURANCE |
| DISPOSITION: | AFFIRMED IN PART; REVERSED AND RENDERED IN PART. - 7/31/97 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 8/22/97 |

**BEFORE SULLIVAN, P.J., McRAE AND ROBERTS, JJ.**

**SULLIVAN, PRESIDING JUSTICE, FOR THE COURT:**

¶1. Dorothy Ferguson suffered over $100,000 in damages while riding as a passenger in a vehicle negligently hit by an underinsured driver. The negligent driver only had $25,000 in liability insurance coverage. Mrs. Ferguson demanded that her insurance carrier, United States Fidelity and Guaranty Company (USF&G), aggregate her uninsured motorist bodily injury coverage on her three cars. USF&G refused. The Lafayette County Circuit Court granted Mrs. Ferguson's summary judgment motion, finding that she was entitled to the aggregate amount. USF&G appeals to this Court.

## STATEMENT OF THE FACTS

¶2. On July 18, 1993, Dorothy Ferguson, a passenger in her Cadillac Seville, was hit by a vehicle driven by Marzee Sipes. The accident occurred in Pontotoc County. Sipes's vehicle was insured by Allstate with a $25,000 limit of liability. Allstate paid the $25,000 limit of Sipes's coverage to the Fergusons. However, Mrs. Ferguson suffered more than $100,000 in bodily damages.

¶3. At the time of the accident, Dorothy and Reid Ferguson had three vehicles-- the Cadillac, a GMC truck, and a Pontiac Firebird-- insured under one USF&G policy with a $25,000 limit of liability for Uninsured Motorists Bodily Injury (UMBI) on each vehicle with USF&G. On October 11, 1993, Mrs. Ferguson wrote to USF&G demanding the aggregation of the UMBI coverage for the three cars, totaling $75,000. The letter also stated that Mrs. Ferguson would accept the $25,000 from Allstate and $52,000[1] from USF&G to settle her claims. Based upon their interpretation of *In Re Koestler*, 608 So.2d 1258 (Miss. 1992), USF&G maintained that they were not required to stack the three UMBI coverages, because Mrs. Ferguson's policy contained an unambiguous anti-stacking clause, and the total uninsured motorist coverage was greater than the statutory minimum of $10,000 per car. USF&G calculated that it owed Mrs. Ferguson $30,000 in uninsured motorist coverage ($10,000 per vehicle times 3 vehicles) less the credit offset of Allstate's $25,000 payment, for a total $5,000. USF&G waived its potential subrogation rights against Marzee Sipes, allowing Mrs. Ferguson to release Allstate and Sipes. USF&G paid Mrs. Ferguson $5,000.

¶4. Mrs. Ferguson has been insured by USF&G for a number of years. In July, 1991, Mrs. Ferguson insured the Cadillac Seville with USF&G. The premium for $25,000 of UMBI coverage on the Cadillac was $22 per six months, renewable every January 10th and July 10th. In July of 1992, the premium was raised to $45. On January 10, 1993, the Fergusons were charged a single $45 premium to cover two cars with $25,000 in UMBI coverage. However, the policy charged separate premiums for each car for all other types of coverage included in the policy. Within the six month period between January 10 and July 10, 1993, the Ferguson family added a third car to the policy. The Ferguson family paid a separate premium for each car's liability and uninsured motorist property damage, but one premium of $45 for all three cars for $25,000 UMBI coverage.

¶5. On February 4, 1994, Mrs. Ferguson filed a complaint for declaratory judgment in Lafayette County Circuit Court. Mrs. Ferguson alleged that USF&G had previously paid stacked uninsured motorist coverage and should not be allowed to unilaterally change its policy without notifying the insured. Even if USF&G was entitled to limit stacking, Mrs. Ferguson claimed that she should receive $45,000, which represents $25,000 for the involved car, plus $10,000 for each of the two uninvolved cars. With credit set-off from the $25,000 Allstate payment, Mrs. Ferguson claimed that USF&G owed her $20,000.

¶6. After discovery, both parties moved for summary judgment. On December 6, 1994, Judge Kenneth Coleman heard oral arguments from both sides. Judge Coleman rendered a bench opinion granting Mrs. Ferguson's motion for summary judgment and denying USF&G's motion. On December 10, 1994, the lower court entered a *nunc pro tunc* order granting Mrs. Ferguson's motion for summary judgment and ordering USF&G to pay Mrs. Ferguson $75,000 with credit for the $5,000 previously paid.

## STATEMENT OF THE LAWI.

### WHETHER AN INSURED MAY AGGREGATE UMBI COVERAGE UNDER A POLICY INSURING MULTIPLE VEHICLES BUT FOR WHICH THE INSURED PAID ONLY ONE PREMIUM FOR UMBI COVERAGE?

¶7. This Court has endorsed "stacking" or aggregating uninsured motorist coverage of multiple

policies since our decision in *Harthcock v. State Farm Mutual Automobile Insurance Co.*, 248 So.2d 456 (Miss.1971). In fact, stacking is so firmly imbedded in Mississippi uninsured motorist law that it "has become a positive gloss upon the Uninsured Motorist Act." *Wickline v. U.S. Fidelity & Guar. Co.*, 530 So.2d 708, 714 (Miss. 1988). However, up until now we have also consistently maintained that insurance companies and their insured are free to contractually limit stacking of uninsured motorist coverage, so long as the policy language is clear and unambiguous and the statutory minimum is upheld. *Koestler*, 608 So.2d at 1261, *partially overruled by* **Nationwide Mut. Ins. Co. v. Garriga,** 636 So.2d 658 (Miss. 1994); *State Farm Mutual Automobile Insurance Co. v. Kuehling*, 475 So.2d 1159, 1162 (Miss.1985); *State Farm Mutual Automobile Insurance Co. v. Talley*, 329 So.2d 52, 54 (Miss.1976); *Talbot v. State Farm Mutual Automobile Insurance Co.*, 291 So.2d 699, 701 (Miss.1974). "Over and above legally mandated minimums, the parties have always remained free to agree as they wish. The Act but reinforces the point when it empowers the parties to contract for coverage 'over the minimum requirement.'" *Koestler*, 608 So.2d at 1263. We still will not interfere with the right of the insurer and insured to contract for the amount of uninsured motorist (UM) coverage that the insured wants to purchase or the amount or number of premiums that the insurer charges for that coverage, so long as the policy meets the minimum statutory requirements.

¶8. In previous cases before this Court, we have allowed aggregation of UM coverage despite anti-stacking clauses based upon ambiguity in the language of the policy or the fact that separate premiums were charged for each car. Insurance companies have responded by rewriting their policy language and altering their premium scheme in order to circumvent our decisions. We now affirmatively declare that the public policy of this State mandates stacking of UM coverage for every vehicle covered under a policy, regardless of the number or amount of the premium(s) paid for UM coverage. We hereby hold that anti-stacking clauses as applied to UM coverage are against public policy, and contracts contrary to public policy are unenforceable. *See Hertz Commercial Leasing Division v. Morrison*, 567 So.2d 832, 834-35 (Miss. 1990).

¶9. We point to the language of our earliest stacking case to show that the intent of our uninsured motorist law is to provide the insured with adequate protection against injury caused by an uninsured motorist:

> After a careful consideration of the authorities from other jurisdictions and the requirements of our statute, we hold that the uninsured motorists coverage of each policy of liability insurance is available to the injured insured until all sums which he shall be entitled to recover from the uninsured motorist have been recovered. The coverage is mandatory on the insurer and this undertaking cannot be diminished by a provision in the policy. We find no words in the statute indicating that one policy providing minimum coverage is all the statute requires. The statute requiring the coverage does not say how much uninsured motorists coverage shall be provided for each accident or each vehicle or each uninsured motorist. It requires each policy to provide the minimum coverage . . . .

*Harthcock*, 248 So.2d at 461-62. More recently, this Court reiterated its positive stand in favor of stacking:

> Stacking is firmly imbedded in our uninsured motorist law. The sort of stacking sought here,

i.e., stacking multiple coverages within a single policy, has been mandated. As with other types of stacking, the rationale offered is that multiple premiums are paid and multiple (stacked) coverages should be available. However, what is important is the fact that stacking has become a positive gloss upon our Uninsured Motorist Act.

. . . .

Uninsured motorist coverage is designed to provide innocent injured motorists a means to recover all sums to which they are entitled from an uninsured motorist. The statute is to be liberally construed so as to achieve compensation.

. . . .

Unlike other jurisdictions, such as Alabama, Minnesota and Montana, which have legislatively mandated that stacking is contrary to public policy, stacking is retained in Mississippi as a "positive gloss" of our UM statute.

*Harris v. Magee*, 573 So.2d at 653-55 (Miss. 1990) (citations omitted).

¶10. To say that an insured may contract with his insurance company to limit stacking is disingenuous. Insurance contracts essentially are contracts of adhesion. The insured has only two choices in "negotiating" the terms of his policy--he may accept the terms offered by his insurance company, or he may reject them and go to a different insurance company. When the entire insurance industry writes its policies to preclude stacking of UM coverage, attempting to circumvent case law and defeat public policy, the insured is denied any choice whatsoever. This Court has previously recognized the need to protect insureds because of their uneven bargaining power in dealing with insurance companies:

> It is a matter almost of common knowledge that a very small percentage of policy holders are actually cognizant of the provisions of their policies and many of them are ignorant of the names of the companies issuing the said policies. The policies are prepared by the experts of the companies, they are highly technical in their phraseology, they are complicated and voluminous and in their numerous conditions and stipulations furnishing what may be veritable traps for the unwary. Courts, while zealous to uphold legal contracts, should not sacrifice the spirit to the letter nor should they be slow to aid the confiding and innocent.

*Andrew Jackson Life Insurance Co. v. Williams*, 566 So.2d 1172, 1188-89 (Miss. 1990) (citations omitted).

¶11. Mrs. Ferguson paid a premium to cover three cars with UMBI coverage. That she paid only one premium, the same premium charged regardless of the number of cars covered, does not diminish the effect of a premium being paid for UMBI coverage.

> Any language attempting to limit an insurer's liability must fail when it deprives the insured of benefits for which a premium was paid. . . . [R]ecovery cannot be limited by an insurer for benefits for which a premium is paid by an insured, notwithstanding clear and unambiguous language of attempted limitation by the insurer.

***Government Employees Insurance Co. v. Brown***, 446 So.2d 1002, 1006 (Miss. 1984). USF&G cannot deprive Mrs. Ferguson of the benefits under her policy for which a premium was paid, even though a separate premium was not paid for each car covered. The circuit court was correct in finding that Mrs. Ferguson was entitled to recover the full aggregate amount of UMBI coverage under her policy, totaling $75,000, with credit for the $5,000 previously paid.

## II.

**WHETHER, UNDER THE MISSISSIPPI UNINSURED MOTORIST ACT, MISS. CODE ANN. § 83-11-101, ET SEQ., THE PRACTICE OF AGGREGATION OF UNINSURED MOTORIST COVERAGES VIOLATES THE STATUTORY PROHIBITION OF § 83-11-101(1) AGAINST AN INSURANCE COMPANY AFFORDING UNINSURED MOTORIST COVERAGE IN EXCESS OF THE AMOUNT OF LIABILITY COVERAGE PROVIDED BY THE POLICY?**

¶12. USF&G contends that Mrs. Ferguson may not aggregate her UMBI coverage to recover benefits in excess of $25,000, because she has only $25,000 in liability coverage. In other words, their argument is that an insured may not carry uninsured motorist coverage in excess of her liability coverage. USF&G points to the language of Miss. Code Ann. § 83-11-101(1) in support of their argument. The pertinent part of the statute reads as follows:

> [H]owever, at the option of the insured, the uninsured motorist limits may be increased to limits not to exceed those provided in the policy of bodily injury liability insurance of the insured or such lesser limits as the insured elects to carry over the minimum requirements set forth by this section.

Miss. Code Ann. § 83-11-101(1). We do not interpret this language as preventing an insured from recovering the aggregate of his uninsured motorist coverage where it exceeds the amount of his liability coverage limit. Instead, we have held that the statutory *minimum* is "that amount of coverage that the insured elects up to the amount of liability coverage purchased." ***Garriga***, 636 So.2d at 659. In other words, § 83-11-101(1) authorizes the insured to demand UM coverage up to the amount of his liability coverage limits. Nothing in the statute precludes an insured and insurer from contractually agreeing to a larger amount of UM coverage. Here, USF&G and the Fergusons contracted for $25,000 in UMBI coverage on each of their three cars covered under the policy. Mississippi's statutory scheme does not prevent Mrs. Ferguson from recovering the full $75,000 aggregate amount of her UMBI coverage.

## III.

**WHETHER USF&G IS ENTITLED TO AN OFFSET CREDIT FOR AMOUNTS PAID BY THE NEGLIGENT UNDERINSURED MOTORIST'S LIABILITY INSURANCE CARRIER?**

¶13. The circuit court refused to allow USF&G a $25,000 credit for the amount paid by Allstate to Mrs. Ferguson. USF&G contends that the lower court's decision was against this Court's ruling in ***State Farm Mutual Auto. Insurance Co. v. Kuehling***, 475 So.2d 1159 (Miss. 1985). In ***Kuehling***, we upheld an offset clause, finding that the uninsured motorist statute does not prohibit an insurance company from offsetting UM benefits by any amount paid by the tortfeasor's carrier. ***Id***. at 1163.

"The insurance company is bound to pay only that amount which constitutes the difference between policy limits available under an insured's own policy and that amount received from one underinsured." ***Id***.

¶14. Mrs. Ferguson argues that since she suffered damages in excess of the total of both Sipes's liability coverage and the aggregate of her own UMBI coverage, then USF&G is not entitled to an offset. She asserts that such an offset does not make the victim whole and is therefore against public policy.

¶15. In ***Kuehling***, the insured only incurred damages in the amount of $11,382.90, while receiving $10,000 from the tortfeasor's insurance carrier, $5000 in medical benefits from her own insurance company, and another $10,000 from her insurance company for underinsured motorist coverage. ***Id***. at 1160. Based in part upon the fact that Ms. Kuehling had already received $25,000 for only $11,382.90 in proven damages, this Court held that Ms. Kuehling was not entitled to any further recovery from her insurance carrier in the form of uninsured motorist aggregate coverage. ***Id***. at 1163. However, we did not limit the rule in ***Kuehling*** to cases in which the amount of proven damages is less than the total amount of coverage available. ***Id***. In fact, we have since applied ***Kuehling*** to cases similar to this one in which allowing the offset has prevented the injured insured from receiving full compensation for his injuries. ***Miller v. Allstate Insurance Co.***, 631 So.2d 789, 791 (Miss. 1994); ***Dixie Insurance Co. v. State Farm Mutual Auto. Insurance Co.***, 614 So.2d 918, 922-23 (Miss. 1992); ***Brown v. Maryland Casualty Co.***, 521 So.2d 854, 857 (Miss. 1987).

¶16. The purpose of uninsured motorist coverage is to provide protection for the insured to the extent that the underinsured tortfeasor cannot pay. It is not against public policy to allow an insurance company to maintain an offset clause to recover that portion of damages for which the tortfeasor is insured. The circuit court erred in refusing to allow the offset of $25,000 in this case.

## CONCLUSION

¶17. Based upon the sound economic benefits of allowing stacking and the lack of bargaining power of the insured, we announce a new public policy against anti-stacking provisions in insurance contracts in this State as applied to UM coverage. We will no longer permit insurance companies to circumvent our decisions and defeat public policy by denying insureds their full aggregate UM coverage for which they pay a premium. Regardless of the number of premiums paid or the amount of the premium(s), we will allow stacking of uninsured motorist coverage for all cars covered under insurance policies for UM coverage. The circuit court properly held that Mrs. Ferguson was entitled to the full aggregate amount of her UMBI coverage from USF&G, totaling $75,000 minus the $5,000 already paid to her. However, the court erred in refusing to allow a $25,000 credit in favor of USF&G for the amount that Mrs. Ferguson recovered from Allstate. We therefore hold that USF&G is responsible for paying Mrs. Ferguson the remaining amount of $45,000.

¶18. **AFFIRMED IN PART; REVERSED AND RENDERED IN PART.**

**PRATHER, P.J., PITTMAN, BANKS, McRAE AND ROBERTS, JJ., CONCUR. SMITH, J., CONCURS IN RESULT ONLY. DAN LEE, C.J., SPECIALLY CONCURS WITH SEPARATE WRITTEN OPINION. MILLS, J., NOT PARTICIPATING.**

**DAN LEE, CHIEF JUSTICE, SPECIALLY CONCURRING:**

¶19. In reaching the correct resolution of this case the majority steps across the fine line dividing interpretation of the law with promulgation of the law. I write specially to point out that there is no reason to resort to broad statements of "public policy" when our Uninsured Motorist statute and stacking case law are adequate to resolve the question presented before the Court today.

THE MAJORITY'S REASONING SERIOUSLY HAMPERS THE ABILITY OF THE PARTIES TO CONTRACT FOR INSURANCE COVERAGE AND IS NOT SANCTIONED BY THE UNINSURED MOTORIST STATUTE.

¶20. The majority's bold proclamation that all attempts to limit stacking are void as against public policy is overly broad and outside the scope of permissible interpretation of Miss. Code Ann. § 83-11-101, Mississippi's Uninsured Motorist (U.M.) statute. Mississippi's U.M. statute reads, in relevant part:

> (1) No automobile liability insurance policy or contract shall be issued or delivered after January 1, 1967, unless it contains an endorsement or provisions undertaking to pay the insured all sums which he shall be legally entitled to recover as damages for bodily injury or death from the owner or operator of an uninsured motor vehicle, within limits which shall be no less than those set forth in the Mississippi Motor Vehicle Safety Responsibility Law, as amended, under provisions approved by the commissioner of insurance; however, at the option of the insured, the uninsured motorist limits may be increased to limits not to exceed those provided in the policy of bodily injury liability insurance of the insured or such lesser limits as the insured elects to carry over the minimum requirement set forth by this section.

Miss. Code Ann. § 83-11-101(1) (1972). It is readily apparent that stacking of coverages is mentioned nowhere in the statute as any type of minimum or mandated coverage.

¶21. It is rather a general presumption that insured parties should get what they bargained for which has been the wellspring of stacking. The legal rationale "that multiple premiums are paid and multiple (stacked) coverages should be available," *Wickline v. United States Fidelity & Guar. Co.*, 530 So. 2d 708, 714 (Miss. 1988), permeates the stacking decisions of this Court and provides the logical and legal grounds for this Court to apply the "gloss" on the U. M. Statute. *See*, *Nationwide Mutual Ins. Co. v. Garriga*, 636 So. 2d 658 (Miss. 1994) ("[A]n insured shall receive full benefit for what he pays."); *Hartford Acc. & Indem. Co. v. Bridges*, 350 So. 2d 1379 (Miss. 1977); *Southern Farm Bureau Casualty Ins. Co. v. Roberts*, 323 So. 2d 536, 539 (Miss. 1975). The majority in *Koestler* succinctly pointed out:

> The theory . . . without exception has been that insurer and insured have entered two or more contracts covering the same eventuality and that the insured may enforce these contracts according to their terms. To be sure, these contracts may have been encouraged by statute, and at times we have found ambiguities and resolved them in the insureds' favor. *This does not alter the fact that the legal origin of stacking is contract and not statute*.

***Koestler v. Federal Ins. Co.***, 608 So. 2d 1258, 1261 (Miss. 1991) (emphasis added) (discussing, ***Thiac v. State Farm Auto. Ins. Co.***, 569 So. 2d 1217 (Miss. 1990); ***Cossitt v. Nationwide Mutual Ins. Co.***, 551 So. 2d 879 (Miss. 1989); ***Brown v. Maryland Casualty Co.***, 521 So. 2d 854 (Miss. 1987); ***State Farm Mutual Auto. Ins. Co. v. Kuehling***, 475 So. 2d 1159 (Miss. 1985), and ***Government Employees Ins. Co. v. Brown***, 446 So. 2d 1002 (Miss. 1984)), *rev'd on other grounds*, ***Nationwide Mutual Ins. Co. v. Garriga***, 636 So. 2d 658 (Miss. 1994).

¶22. In other words, stacking is the logical result of honoring the *presumed* expectations of the insured, i.e., that having paid for coverage on multiple vehicles, she is entitled to the benefit of that coverage. It is clear that the legal basis permitting stacking, in the absence of any statutory guidance whatsoever, is the general idea that the insured was entitled to all the coverage for which she paid.

¶23. The reverse of this theory was recognized in our earlier stacking cases, in which this Court held that insurance companies, as the other parties to a private contract, could by clear and unambiguous language, limit their liability for stacking. ***Bridges***, 350 So. 2d 1379 (Miss. 1977) (citing ***Talbot v. State Farm Mutual Auto. Ins. Co.***, 291 So. 2d 699 (Miss. 1974)).

¶24. It is obvious, however, that the insurer's superior bargaining position, the adhesive nature of insurance contract, and the technical language of limitation on coverage overshadow the presumption that the insured had freely contracted to limit stacking. Consequently, this Court, seeking to protect the insured, has consistently and firmly construed all attempts at contractual limitations on stacking very harshly against the insurance companies. ***Garriga***, 636 So. 2d at 662; ***Bridges***, 350 So. 2d at 1382; ***Government Employees Ins. Co. v. Brown***, 446 So. 2d at 1006.

¶25. This mode of analysis reached its height during the so called "ambiguity" cases in which this Court held, as a matter of law, that multiple premiums coupled with a limitation of stacking was ambiguous as a matter of law. ***Hartford Acc. & Indem. Co. v. Bridges***, 350 So. 2d 1379 (Miss. 1977); ***Pearthree v. Hartford Acc. & Indem. Co.***, 373 So. 2d 267 (Miss. 1979).

¶26. The essential point is that this Court was not acting to simply prohibit any limitation whatsoever on stacking, as it does today, but rather was quite naturally and in accordance with our precedent acting to protect the insured's freedom to contract by requiring that the insured be fully aware of and understand the limitation.

¶27. It is true, as the majority notes, that in attempting to simultaneously protect the insured and defend the right to contract, this Court was eager to find ambiguity, with the result that a confusing and apparently result-oriented body of case law developed around stacking, with this Court finding ambiguity on various grounds, and the insurance companies scrambling to structure their policies around the language of the Court.

¶28. The majority, however, seeks to alleviate this problem with the most radical of surgeries and simply declare, by judicial fiat, that the right of the insurance company to limit stacking is void. With all due respect, this approach, while appealingly simple, is not supportable in the statute, and there is a better and more restrained approach.

THE U.M. STATUTE SHOULD BE READ TO REQUIRE THAT INSURANCE COMPANIES OBTAIN WRITTEN REJECTIONS OF STACKING IN ORDER TO LIMIT THEIR COVERAGE.

¶29. Rather than broad proclamations of public policy, this Court should look to the U.M. statute and our case law to resolve this case. As stated above, in the past the rationale for stacking has been the presumed expectations of the parties, and I propose that this Court require that the expectations of the parties with respect to stacking be made explicit. The only valid limitation this Court should recognize is a separate, written, and comprehensible rejection of stacking benefits from the insured. This is supported by the language of the U.M. statute and our case law.

¶30. Mississippi's U.M. statute allows the insured to opt out of U.M. coverage altogether if she does so in writing. "The coverage herein required shall not be applicable where any insured named in the policy shall reject the coverage in writing." Miss. Code Ann. § 83-11-101(1). Obviously, the legislature contemplated that U.M. coverage could be eliminated entirely at the option of the insured, provided that it was in writing. In **Atlanta Casualty Co. v. Payne**, this Court agreed, provided that the insured "[has] a sufficient understanding of the ramifications of [the] language to make an informed partial rejection or waiver of uninsured motorist coverage when they signed the exclusion agreement." 603 So. 2d 343, 348 (Miss. 1992). It is logical to require the same of insurance companies who wish to limit stacking. In other words, the solution is to treat stacked coverage as extra coverage for which the parties have contracted, and to which the insured is entitled by default, unless the insurance company undertakes the burden of obtaining a separate, comprehensible, and written disclaimer of stacking. Under this rationale those who want stacked coverage pay for it, and those who don't want it don't pay for it.

¶31. It is clear that such a rule would not cut down on the statutory minimum under this Court's holding in **Garriga,** because, if stacked coverage is treated as extra U.M. coverage, the insured has the *right* to contract for stacked coverage above the $10,000 minimum. Additionally, the concern voiced by the majority that all insurance contracts will be written to exclude stacking becomes irrelevant because, under **Garriga**, the carrier *must* provide the insured with the extra stacked coverage if she so desires it. **Garriga**, 636 So. 2d at 663 (holding that the minimum under the statute is $10,000 plus whatever additional coverage the insured desires to purchase).

¶32. This rule would have the effect of allowing the insured the greatest possible protection from the adhesive nature of insurance contracts and the superior bargaining position of insurance companies by affording the insured the right to stacking if she so desires, and making sure that she is well apprised of that right. It is not unreasonable to require the insurance company to bear the burden of educating its customers regarding stacking and their rights under the U.M. statute. Such a rule best balances the interests in permitting private contractual relations between the parties, and honoring the broad intent of the U.M. statute.

¶33. In the case *sub judice*, it is unclear whether Ferguson was even aware of what stacking was, much less whether she did or did not want the benefit of stacking. In the absence of a separate and written disclaimer of the desire to have the benefit of stacked coverage, I would affirm the lower court's decision in this case.

1. The Fergusons also had $2,000 in medical pay coverage. The $52,000 represents the stacked $75,

000 minus the $25,000 paid by Allstate plus the $2,000 in med pay.