**Michael T. SCHAUGER, Plaintiff,**

v.

**NATIONWIDE MUTUAL INSURANCE COMPANY, Defendant.**

No. Civ.A. 1:96CV422GR.

United States District Court,
S.D. Mississippi,
Southern Division.

Aug. 29, 1997.

Donald C. Dornan, Jr., Biloxi, MS, for Michael T. Schauger.

Floyd G. Hewitt, Jr., Compton, Crowell & Hewitt, Biloxi, MS, for Nationwide Mutual Insurance Company.

---

## MEMORANDUM OPINION

GEX, District Judge.

This cause is before the Court on the motion for summary judgment filed by the defendant, Nationwide Mutual Insurance Company [Nationwide] [30–1] and the motion for partial summary judgment filed by the plaintiff, Michael T. Schauger [38–1]. After due consideration of the evidence of record, the briefs of counsel, the applicable law, and being otherwise fully advised in the premises, the Court finds as follows:

### Standard of Review

A grant of summary judgment is warranted when, viewed in the light most favorable to the nonmoving party, "[t]he pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED.R.CIV.P. 56(c); *Behrens v. Pelletier*, 516 U.S. 299, 116 S.Ct. 834, 840, 133 L.Ed.2d 773 (1996); *Howlett v. Birkdale Shipping Co., S.A.*, 512 U.S. 92, 114 S.Ct. 2057, 2061, 129 L.Ed.2d 78 (1994); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "[S]ummary judgment ... is mandated where the facts and the law will reasonably support only one conclusion." *McDermott Intern., Inc. v. Wilander*, 498 U.S. 337, 356, 111 S.Ct. 807, 112 L.Ed.2d 866 (1991) (citation omitted).

### Statement of Facts

On September 11, 1995, the plaintiff was injured by a hit-and-run driver while riding his motorcycle in Tennessee. The hit-and-run driver has never been found or identified. The plaintiff's injuries resulted in medical expenses of approximately $52,000 and lost wages of $8,771. At the time of his accident, the plaintiff had an automobile insurance policy with Nationwide which insured three vehicles. The motorcycle at issue had uninsured motorist [UM] bodily injury coverage of approximately $10,000 from another carrier. That carrier paid the plaintiff the maximum policy limits. Plaintiff's counsel subsequently contacted Nationwide by mail, contending that because the plain-

tiff's Nationwide policy insured three vehicles for liability and UM coverage ($25,000 per person and $50,000 per accident for bodily injury), the plaintiff was entitled to aggregate or stack the policy's UM coverage to three times $25,000, or $75,000. (Def.'s Mot. for Summ. J., Exh. A; Exh. C, pp. 137–39.) The policy expressly provides that the mere fact that more than one vehicle is covered does not increase the limits for UM coverage beyond the stated policy limits for one occurrence. ( *Id.*, Exh. K.)

Nationwide responded to the plaintiff's inquiry, advising, *inter alia*, that the availability of UM coverage for the motorcycle was uncertain. Nationwide further stated that, assuming there were coverage, the maximum allowable coverage would in any event be only $25,000 under the terms of the policy and Mississippi law limiting the amount of UM coverage to the extent of liability coverage. ( *Id.*, Exh. C, pp. 140–41.) Nationwide eventually determined that coverage was available but that the amount was limited to $25,000. The plaintiff filed a lawsuit seeking declaratory relief and damages in state court, which Nationwide subsequently removed to this Court.

Nationwide maintained its position that coverage was limited to $25,000 until the Mississippi Supreme Court decided the pertinent issues adverse to its position in *U.S. Fidelity and Guaranty Company v. Ferguson*, 698 So.2d 77, 1997 WL 426261 (Miss., July 31, 1997) (NO. 94–CA–01283–SCT). On August 1, 1997, the defendant's counsel wrote a letter to the Court conceding that in light of *Ferguson* Nationwide had authorized the payment of $75,000 and that this amount would bring the controversy to a conclusion. That same day plaintiff's counsel wrote a letter to the Court contending that the payment of $75,000 would not resolve the issue of prejudgment interest and punitive damages.

### Legal Analysis

#### I. Punitive Damages

In his motion for partial summary judgment, the plaintiff seeks the payment of $75,000 under the policy. Following *Ferguson*, Nationwide does not oppose the motion. The

plaintiff now contends that he is entitled to punitive damages because Nationwide had refused in bad faith to pay at least $50,000.

It is undisputed that this Court must apply Mississippi law in deciding the legal issues in this lawsuit filed pursuant to the Court's diversity jurisdiction. *Erie R. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938); *Batts v. Tow–Motor Forklift Co.,* 978 F.2d 1386, 1389 (5th Cir.1992). The Court therefore considers the issue of bad faith and its legal foundations under Mississippi law. The Mississippi Supreme Court provides the following:

> "Although punitive damages are not ordinarily recoverable in cases involving breach of contract, they are recoverable where the breach results from an intentional wrong, insult, or abuse as well as from such gross negligence as constitutes an independent tort." *Blue Cross & Blue Shield v. Maas,* 516 So.2d 495, 496 (Miss. 1987) (citations omitted). "As such, punitive damages are allowed only with caution and within narrow limits." *Id.*

To recover punitive damages from an insurer for "bad faith", the insured must prove by a preponderance of evidence that the insurer acted with (1) malice, or (2) gross negligence or reckless disregard for the rights of others. *Universal Life Ins. Co. v. Veasley,* 610 So.2d 290, 293 (Miss. 1992) (citing *Weems v. American Security Ins. Co.,* 486 So.2d 1222, 1226–27 (Miss. 1986)); *Aetna Casualty & Surety Co. v. Day,* 487 So.2d 830, 832 (Miss.1986). If the insurer had a legitimate or arguable reason to deny payment of the claim, then the trial judge should refuse to grant a punitive damage instruction. *Id.* (citing *Pioneer Life Ins. Co. of Illinois v. Moss,* 513 So.2d 927, 929 (Miss.1987)). Arguable reason is defined as "nothing more than an expression indicating the act or acts of the alleged tortfeasor do not rise to heightened level of an independent tort." *Id.* "The trial court is responsible for reviewing all evidence before it in order to ascertain whether the jury should be permitted to decide the issue of punitive damages." *Id.* (citing *Andrew Jackson Life Ins. Co. v.*

*Williams,* 566 So.2d 1172, 1183–1184 (Miss. 1990)).

*Caldwell v. Alfa Ins. Co.,* 686 So.2d 1092, 1095–96 (Miss.1996). It is well established in Mississippi that "[t]he uninsured motorist statute is to be liberally construed so as to provide coverage." *Harris v. Magee,* 573 So.2d 646, 651 (Miss.1990) (citations omitted). *Harris* reaffirmed the following policy enunciated by the Mississippi Supreme Court:

> Stacking is firmly imbedded in our uninsured motorist law ... [S]tacking has become a positive gloss upon our Uninsured Motorist Act ... [A]ll classes [of] statutory insureds may recover of the UM insurer all amounts he or she may be entitled to recover as damages from the uninsured motorist, *limited only by the limits of UM coverage multiplied by the number of vehicles insured in the policy.*

(*Id.* at 653 (citation and emphasis omitted in part).)

██ The plaintiff's allegation of bad faith is based on his contention that there was no colorable argument permitting Nationwide to deny coverage. The plaintiff's motion for partial summary judgment for the amount of $75,000 is set forth in two steps: The plaintiff contends that, in addition to the $25,000 in undisputed UM coverage, Nationwide was obligated under the policy to (1) stack the $25,000 in coverage for the second vehicle, and (2) stack the $25,000 in coverage for the third vehicle. Nationwide counters that it was justified in withholding additional payment based on second-vehicle stacking and third-vehicle stacking. It is undisputed that *Ferguson,* an intervening landmark decision, allows both second and third vehicle stacking under the facts of this case.

Nationwide contends, *inter alia,* that the plaintiff cannot show bad faith because the precise issue posed by this controversy is pending before the Mississippi Supreme Court in *Nationwide v. Wetzel,* Cause Number 95–CA–01106–SCT. The mere pendency of this appeal does not, standing alone, rule out the possibility of bad faith. In any event, the Court agrees, as set forth below, that the issues raised by this controversy and apparently raised on appeal in *Wetzel* were not

asserted in bad faith against the plaintiff during the claims process.

The plaintiff argues that following *Harrison v. Allstate*, 662 So.2d 1092 (Miss.1995), no arguable reason existed under Mississippi law to prevent second-vehicle stacking, a result which was further underscored by *Ferguson*. In *Harrison*, the Mississippi Supreme Court held that the insured was entitled to stacked UM coverage where separate insurance premiums were charged for UM coverage under the guise of one lump sum on the policy's declaration page. (*Id.* at 1094.)[1] The insurer presented the affidavit of its actuary reasoning that "the difference in the premium charged for one vehicle and the premium charged for two or more vehicles reflects solely the difference in expected claim frequency, the number of claims filed, and makes no allowance for increased losses under a multiple vehicle policy." (*Id.* at 1093.) The trial court rejected the plaintiff's attempt to infer bad faith from the insurer's procedure. (*Id.*) The Mississippi Supreme Court affirmed that portion of the trial court's ruling, noting that the insurer had no prior notice that its policy violated Mississippi law regarding stacking. The court further observed that the insurer had paid the plaintiff "the benefits it thought he was entitled to receive and did not engage in malicious conduct." (*Id.* at 1095.)

As set forth below, Nationwide contends that it was not violating the rule in *Harrison* because the single premium charged was not a disguised aggregate of separate premiums. Alternatively, Nationwide contends that, in any event, *Harrison* made no difference in this case because section 83–11–101(*l*) prevented the plaintiff from obtaining UM coverage that exceeded the pertinent amount of coverage for bodily injury liability. In this case, that amount was $25,000. *See* Miss. Code Ann. § 83–11–101(1) (1972).[2]

In *Ferguson*, the Mississippi Supreme Court, filling in a gap in the law, expressly held, *inter alia*, that section 83–11–101 does not limit stacking above the limits of liability coverage where the parties so contract. *Ferguson*, 698 So.2d 77, 80–81. The court further held that "the public policy of this State mandates stacking of UM coverage for *every vehicle* covered under a policy, regardless of the number or amount of the premium(s) paid for UM coverage." *Ferguson*, 698 So.2d 77, 79 (emphasis added). The court also went a step further, holding that "anti-stacking clauses as applied to UM coverage are against public policy, and contracts contrary to public policy are unenforceable." (*Id.*) The bright lines drawn by *Ferguson* are of little benefit to the bad-faith inquiry at hand. Rather, the Court finds that the law in Mississippi was, in the very least, unsettled before *Ferguson*.

In *Holloway v. Nationwide*, 1:93cv199GR (S.D.Miss., July 18, 1994) (unpublished), decided before *Ferguson*, this Court resolved the section 83–11–101 issue adverse to Nationwide's position. In reaching this result, the Court rejected *Ball v. U.S. Fidelity and Guar. Co.*, 696 F.Supp. 1117 (N.D.Miss.1988), which reached a contrary conclusion. In *Ball*, the Northern District of Mississippi made an *Erie*-guess that section 83–11–101 limits liability to the *lesser* of the UM coverage times the number of premiums paid or the amount of bodily injury and property damage liability coverage. (*Id.* at 1120.) In *Land v. U.S. Fidelity and Guar. Co.*, 861 F.Supp. 544 (S.D.Miss.1994), the district court's analysis suggested that section 83–11–101 could operate as a ceiling to the amount of stacking permitted. *See id.* at 550. Although the decision by the lower court was overruled in part on other grounds by the Fifth Circuit, the issue whether section 83–11–101 could operate as a ceiling upon stacking arguably was left open. *See*

---

**1.** The insurer initially charged $22.50 for the first car and each additional car thereafter, but eventually revised its policy by charging $28.40 for a single vehicle and $52.40 for two or more vehicles. The court expressly declined to address third vehicle coverage. *Id.*

**2.** Section 83–11–101(1) provides as follows in pertinent part:

[A]t the option of the insured, the uninsured motorist limits *may be increased to limits not to exceed those provided in the policy of bodily injury liability* insurance of the insured or such lesser limits as the insured elects to carry over the minimum requirement set forth by this section.

(*Id.* (emphasis added).)

*Land v. U.S. Fidelity and Guar. Co.*, 78 F.3d 187 (5th Cir.1996). Of course, in the absence of a Mississippi Supreme Court decision on point, it was not clear what the law of Mississippi was on this issue.

In *Land,* a pre-*Ferguson* case, the Fifth Circuit reasoned that insurers were not barred from limiting stacking by express contractual provisions so long as the coverage was not beneath the statutory minimum and did not violate *Harrison* by charging a separate premium in the guise of a lump sum. (*Id.* at 190–91.) Additionally, the exclusionary language must be "clear and unambiguous." (*Id.* at 191.) The *Land* court applied a two-part test by determining (1) whether the contract clearly limits stacking, and (2) whether the record supports a finding that the insured paid a single or multiple premium. (*Id.* at 191.) If a multiple premium is actually charged, stacking is permitted without regard to limiting contractual language. As set forth above, the test in *Land,* which constitutes an *Erie*-guess regarding Mississippi law, is now obsolete in light of *Ferguson.*

The record establishes that the language of the policy at issue clearly and unambiguously excludes stacking. *See* Def.'s Mot. for Summ. J., Exhs. A, K. It is undisputed, however, that the policy charges double the rate of one vehicle for adding two or more vehicles to a single policy. Whether this constitutes two premiums in the guise of one premium sufficient to require stacking notwithstanding the anti-stacking provision in the policy requires evidence "describing how [the insurer] arrived at its UM premiums." (*Id.* at 193.) In *Land,* the Fifth Circuit noted that the district court relegated the second issue to a footnote. (*Id.* at 191.) The Fifth Circuit remanded the case for further factual development of the multiple-single premium issue.

In support of its argument that a single premium was charged, Nationwide submits, *inter alia,* deposition testimony of Marion Burkart, an actuary, who testified that the premium at issue was calculated by factoring in "the increased risk posed by multiple vehicles operating at any given time and being exposed to the risk of separate accidents which might occur at more or less the same time." (Def.'s Mot. for Summ. J., Exh. F. at p. 39.) When questioned why the multi-vehicle rate turned out to be twice the single vehicle rate, Burkart responded as follows:

> We use the actual uninsured motorist loss results to determine the total rate need, and we use the model and relationship to BI [bodily injury] by limit and so forth, because BI is more credible to allocate that. And the end result is that the premium for the multi-car is twice the single car rate, and in total all of the policies whether they're single or multi, will generate collectively the amount of premium we need to cover the amount of loss we expect.

(*Id.,* pp. 56–67.) Nationwide thus contends that the premium is not an aggregate of two single premiums but a single premium arrived at through actuarial factoring unrelated to stacking.

Nationwide's procedure for calculating the single premium resembled the insurer's methodology addressed by the trial court in *Harrison.* There is, however, no indication in the record that Nationwide's policies and procedures before *Harrison* were applied in bad faith to violate the rights of its insureds. Furthermore, following *Harrison,* Nationwide contends that it construed section 83–11–101 as a further limitation on any stacking under *Harrison.* The single premium issue thus appears to be superseded by Nationwide's ultimate reliance on section 83–11–101 as a basis to prevent stacking.

Nationwide points to the testimony of Nationwide's adjustor, Bob Odom, who states that, after *Harrison,* Nationwide changed its procedure to allow stacking of two UM coverages subject to the ceiling created by section 83–11–101. (Def.'s Mot. for Summ. J., Exh. H, pp. 49–50.) This position, although subject to a rigorous challenge, had arguable merit. Although the plaintiff argues, as he well may, that the Mississippi Supreme Court had implicitly decided that section 83–11–101 posed no barrier to stacking of UM coverage, it appears to be beyond dispute that, before *Ferguson,* the Mississippi Supreme Court had not expressly resolved the issue. Nor did the high court expressly address situations flagged by insurers where

stacking may be required but would be subject to limitation under section 83–11–101. Apparently, the Mississippi Supreme Court had never conceptually integrated within the body of stacking law the issue whether section 83–11–101(1) operates to place a ceiling on stacking. Because of these gaps in the law, Nationwide had an arguable basis for obtaining the benefit of its bargain by limiting the stacking of UM coverage to the amount of liability coverage in the policy. Under this view, no more than $25,000 would be payable to the plaintiff under the policy. After investigating the claim, Nationwide was willing to pay the plaintiff the $25,000 it believed the plaintiff was entitled to. That such a position is no longer tenable following *Ferguson* does not constitute substantial evidence of bad faith.

For allegations of bad faith following *Ferguson*, a historical inquiry of the law on stacking is probably no longer required. Nationwide's pre-*Ferguson* conduct, however, must be viewed in light of the gaps in Mississippi law and the contradictory positions taken by federal and state courts in attempting to fathom what the law of Mississippi requires. Although Nationwide appears to have been construing the law in a light most favorable to its position, this does not, standing alone, show bad faith. Nor does this suggest that Nationwide's conduct was reprehensible. Although Mississippi law on stacking was defined as a "positive gloss" on Mississippi's uninsured motorist statute, *Harris*, 573 So.2d at 653, it was not in all respects a well-defined gloss. As set forth above, the Court finds that, without the benefit of *Ferguson*, Nationwide had an arguable basis to limit UM coverage that was expressly excluded by the policy and subject to further limitation under an arguably defensible construction of section 83–11–101. Accordingly, the Court rejects the plaintiffs attempt to establish that, in the very least, Nationwide demonstrated bad faith in failing to stack the second car's UM coverage in light of *Harrison*.

The Court follows the well-established view that an insurer's assertion of an arguable legal position regarding disputed points of law in the face of uncertain statutory construction does not generally give rise to a claim of bad faith. *See Caldwell*, 686 So.2d at 1095–96. Clearly, something more is required to raise the conduct of insurers in denying coverage to the level of an independent tort. As noted by Justice Dan Lee, "the legal origin of stacking is contract and not statute." *Ferguson*, 698 So.2d 77, 1997 WL 426261, at *7 (Lee, J., specially concurring). Judge Lee noted that prior to *Ferguson* the entire stacking inquiry was fraught with conceptual tensions revolving around the need to honor the reasonable expectations of the parties in contracting for insurance coverage, the insurer's superior bargaining position, and public policy concerns regarding adhesion contracts. (*Id.*) Judge Lee further reasoned as follows:

> It is true, as the majority notes, that in attempting to simultaneously protect the insured and defend the right to contract, this Court was eager to find ambiguity, with the result that *a confusing and apparently result-oriented body of case law developed around stacking, with this Court finding ambiguity on various grounds, and the insurance companies scrambling to structure their policies around the language of the Court.*

(*Id.* (emphasis added).)

Given the conceptually imprecise and result-oriented nature of Mississippi's law regarding stacking, the Court finds that Nationwide's conduct in holding to an arguably defensible position—now declared to be indefensible by *Ferguson*—does not allow an inference of malice, gross negligence, or reckless disregard by Nationwide for the rights of the plaintiff. The Court therefore finds that, because Nationwide's conduct was not within the ambit of conduct warranting a juror-imposed penalty, the plaintiff's demand for a jury trial on the issue of punitive damages must fail.

## II. *Prejudgment Interest*

▮ The plaintiff further contends that he is entitled to prejudgment interest on the $75,000 Nationwide is obligated to pay on the policy. The plaintiff cites, *inter alia, Thompson Machinery Commerce Corp. v. Wallace,*

687 So.2d 149 (Miss.1997), which provides the following standard:

> Prejudgment interest arises only where the amount owed is liquidated, or denial of the amount owed is in bad faith. *Simpson v. State Farm Fire & Casualty Co.,* 564 So.2d 1374, 1380 (Miss.1990). "As to whether a claim is liquidated, interest has been denied where 'there is a bona fide dispute as to the amount of damages as well as the responsibility for the liability therefor.'" *Id.* (citation omitted). The plaintiff must make a proper demand or request for prejudgment interest, including from when it is allegedly due, in the pleadings. *Id.* (citation omitted).

(*Id.* at 152.) In this case, whether Nationwide owed $25,000, $50,000, or $75,000 was disputed by the parties. The amount was therefore not liquidated. The mere fact, however, that the amounts in controversy are unliquidated does not necessarily prevent the Court from awarding prejudgment interest. *See Simpson v. State Farm Fire and Cas. Co.,* 564 So.2d 1374, 1381 (Miss.1990). "The central issue for determining whether to award prejudgment interest has generally been whether the insurer's denial to pay the insurance claim upon proper demand was in bad faith or frivolous." *Schwegmann Giant Super Markets v. Golden Eagle Ins. Co.,* 693 F.Supp. 478, 489 (E.D.La.1988) (applying Mississippi law). The Court has found in the above analysis that Nationwide did not act in bad faith. Nor does the Court find any other basis warranting an award of prejudgment interest. Accordingly, the Court finds that the plaintiff's request for prejudgment interest should be denied.

### Conclusion

For the above reasons, the Court finds that the plaintiff's motion for partial summary judgment [38–1] is well-taken and should be granted. The Court further finds that Nationwide's motion for summary judgment [30–1] should be denied in all respects except with regard to the issue of prejudgment interest and punitive damages. A final judgment in accordance with this Memorandum Opinion shall issue this date. All parties shall bear their respective costs.

*FINAL JUDGMENT*

This cause is before the Court on the motion for summary judgment filed by the defendant, Nationwide Mutual Insurance Company [Nationwide] [30–1] and the motion for partial summary judgment filed by the plaintiff, Michael T. Schauger [38–1]. In accordance with the Court's Memorandum Opinion, issued this date and incorporated herein by reference, it is hereby,

ORDERED AND ADJUDGED, that Nationwide's motion for summary judgment [30–1] be, and is hereby, denied in all respects except with regard to the issue of punitive damages and prejudgment interest. It is further,

ORDERED AND ADJUDGED, that the plaintiff's motion for partial summary judgment requiring Nationwide to pay $75,000 in uninsured motorist coverage [38–1] be, and is hereby, granted. It is further,

ORDERED AND ADJUDGED, that the parties bear their respective costs.